Randall Dean LONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00055–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 14, 1991.

Russell J. Wright, Silsbee, Janet Seymour Morrow, Houston, for appellant.

R.F. "Bo" Horka, David Sheffield, Kountz, for appellee.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

Randall Dean Long, the appellant, appeals from a conviction for murder. We affirm.

This is the appellant's appeal from a second trial for the murder of Lisa Wilber. The appellant was tried first in 1985 in Hardin County. The Hardin County jury found the appellant guilty of murder and assessed punishment at 55 years. The Ninth Court of Appeals in Beaumont reversed the conviction, finding the trial court erred in denying the motion for a new trial based upon newly-discovered evidence. *Long v. State*, 739 S.W.2d 98 (Tex.

App.—Beaumont 1987, pet.ref'd). In 1988, on a change of venue, the appellant was retried in Galveston County. The Galveston County jury also convicted the appellant of murder and assessed punishment at 60 years.

## 1. Double jeopardy

In points of error one and two, the appellant argues that the principles of double jeopardy should have barred his second trial because: (1) the circumstantial evidence at his first trial was insufficient, and (2) the "nature" of the opinion reversing his first conviction indicates that an acquittal was imminent, in light of the new evidence. In response to the appellant's similar point of error in his first appeal, the Beaumont Court of Appeals found the cumulative effect of the evidence sufficient to support the conviction. *Long,* 739 S.W.2d at 107.

There are two reasons we cannot review the sufficiency of the evidence in the first trial. First, the law of the case prevents us from reviewing the judgment of the Beaumont Court of Appeals in the Hardin County trial. The legal principle of "the law of the case" provides that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue should there be another appeal. *Ware v. State,* 736 S.W.2d 700, 701 (Tex. Crim.App.1987) (court refused to review for the second time the evidence offered at a suppression hearing). When the facts and legal issues in a case on appeal are virtually identical with those in a previous appeal in which the legal issues were resolved, the determinations made in the previous appeal govern in the current appeal and no further reasoning need be made. *Id.* Because this is the identical issue raised and resolved in *Long,* we are compelled to defer to that opinion.

Second, the Beaumont Court of Appeals is a court of equal jurisdiction with this Court. We do not have the authority to review the decisions of another court of appeals. Only the Court of Criminal Ap-

peals can find that a court of appeals committed error in the Hardin County trial. As a sister court of the Beaumont court, we cannot pass on the propriety of its holdings. We overrule the appellant's point of error one.

In point of error two, the appellant argues that the Galveston County trial was barred because the conviction in the Hardin County trial was reversed based on grounds of newly-discovered evidence. The appellant, however, cites no authority for this proposition. The appellant asserts the Beaumont court's statement in sustaining the point of error alleging newly discovered evidence has the same effect as if the court found the evidence was insufficient.

The Beaumont court stated, in view of the newly-discovered evidence, "the likelihood of a different result at a new trial is great." *Long,* 739 S.W.2d at 112. The "likelihood of a different result" does not necessarily mean that an acquittal is automatic. It is simply a determination that must be made from the record before a court can find a trial court abused its discretion in overruling a motion for new trial on the ground of newly discovered evidence. *See Carlisle v. State,* 549 S.W.2d 698, 704 (Tex.Crim.App.1977).

We overrule the appellant's point of error two.

## 2. Bailiff witness

In point of error three, the appellant argues his due process rights were violated when the sheriff, who was also acting as a bailiff, testified at trial. The appellant argues that the U.S. Supreme Court has virtually established a per se rule requiring reversal if an acting bailiff also serves as an important witness. *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

The appellant did not preserve the error. TEX.R.APP.P. 52(a). The appellant bases point three on his request to the trial court to invoke the "rule." TEX.CODE CRIM. P.ANN. art. 36.06 (Vernon 1981). When the appellant invoked the rule, the State asked

that an exception be made for the sheriff, who would also be acting as a bailiff. The appellant expressed concern about having the sheriff present during the testimony of two other officers. The trial court waived the rule as to the sheriff, except as to the two officers, if called to the court's attention at the time the officers were to take the stand. The appellant did not object to the sheriff's dual role as a witness and as the bailiff.

The appellant was the *first* to call the sheriff to testify. When called by the appellant, the sheriff testified about how the other inmate witnesses were obtained and that no special favors were paid. At the punishment stage, the sheriff testified for the State that the appellant's reputation for being peaceful and law abiding is bad, and the effect of the crime on the Wilber family. Rule 52 requires that in order to preserve a complaint for appellate review, an appellant must have registered a timely and specific objection. *Warren v. State,* 784 S.W.2d 56, 59 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Although the dual role of the bailiff and witness seems ill advised and unnecessary, the appellant failed to object at trial to a witness also serving in a position of authority in the courtroom.

■■■ Even if the appellant had properly objected, we would still overrule this point of error.

In *Gonzales v. Beto,* the U.S. Supreme Court stated:

> *Turner,* of course, did not set down a rigid, *per se* rule automatically requiring the reversal of any conviction whenever any Government witness comes into any contact with the jury. The Court's opinion specifically indicated that association with the jury by a witness whose testimony was "confined to some uncontroverted or merely formal aspect of the case for the prosecution" would hardly present a constitutional problem. [citations omitted] And it indicated that a mere "brief encounter," by chance, with the jury would not generally contravene due process principles.

405 U.S. 1052, 1054, 92 S.Ct. 1503, 1504–1505, 31 L.Ed.2d 787 (1972). In determining whether the appellant's due process rights were violated, we are required to assess: (1) the sheriff's association with the jury, and (2) the importance of his testimony. *Id.*

There were multiple bailiffs in this case. The record is silent on how often and what type of contact, if any, the sheriff had with the jury. Thus, we have nothing to review. According to the two factors of *Gonzales,* the appellant was afforded due process of law.

We overrule the appellant's point of error three.

### 3. Hair sample

■■■ In point of error four, the appellant argues that his due process rights were violated when the trial court refused to exclude the State's testimony on microscopic hair comparisons. The appellant contends the evidence should be excluded because (1) the State violated the first trial court's order to provide the samples to the appellant, and (2) the appellant's chemist was not given the same hairs to analyze and compare because they had been destroyed when the State submitted them for nuclear activation testing.

An identical point of error was considered and overruled by the Beaumont Court of Appeals. *Long,* 739 S.W.2d at 105. The court stated:

> The record fails to show that the State's actions, whether denominated purposeful or careless, were undertaken with an intent to harm Appellant. In fact, State's counsel admitted any test results could have been 100% in Appellant's favor.

*Id.*

For the same reasons as stated under point of error one, we refuse to again review this issue. We overrule the appellant's point of error four.

### 4. Deadly weapon definition

■■■ In point of error five, the appellant argues the jury charge on punishment was fundamentally defective because it did

not define the term "deadly weapon." The 1984 indictment states the appellant "cause[d] the death of an individual, Lisa Moye Wilbur, by cutting and stabbing her with a knife." The State did not seek a new indictment for the second trial in 1988. At the punishment phase, the trial court submitted a jury question issue about the use of a deadly weapon, which the jury answered affirmatively. Although the appellant objected to the submission of the question issue, appellant made no objection about the lack of a "deadly weapon" definition,[1] and made no request for an issue on whether the knife was a deadly weapon.[2]

A defendant shall present his objections to the charge, "distinctly specifying each ground of objection." TEX.CODE CRIM. P.ANN. art. 36.14 (Vernon Supp.1991). If a defendant did not make a proper objection at trial, in order to invoke our power to review on appeal, the defendant must claim that the error was fundamental and the error denied him a fair and impartial trial. TEX.CODE CRIM.P.ANN. art. 36.19 (Vernon 1981). In short, egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984). Here, the lack of the definition in the charge did not amount to "egregious harm." *Id.*

We overrule the appellant's point of error five.

### 5. Affirmative finding notice

In point of error six, the appellant argues he was denied due process because he was not given notice that the State would seek an affirmative finding of a deadly weapon. Citing *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Crim.App.1987), the appellant contends the indictment was insuffi-

cient notice that an affirmative finding would be sought, and would not support submission of a special issue to the jury.

Any allegation that avers a death was caused by a named weapon or instrument necessarily includes an allegation that the named weapon was in the manner of its use capable of causing death. *Ex parte Beck*, 769 S.W.2d 525, 527 (Tex. Crim.App.1989). Here, the indictment alleged that the appellant caused Wilber's *death* with a knife. This allegation satisfies the notice requirement at issue in *Ex parte Patterson. Speering v. State*, 797 S.W.2d 36, 37 (Tex.Crim.App.1990); *Beck*, 769 S.W.2d at 527.

We overrule the appellant's point of error six.

### 6. Prosecutorial vindictiveness

In point of error seven, the appellant argues the State was guilty of prosecutorial vindictiveness in seeking an affirmative finding of a deadly weapon in the Galveston County trial. The appellant argues that due process requires that a defendant be freed of apprehension that the State will retaliate at the retrial by substituting a more serious charge. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974).

The *Blackledge* case involved a reindictment from a misdemeanor charge of assault with a deadly weapon to a felony charge of assault with a deadly weapon with intent to kill and inflict serious bodily injury. 94 S.Ct. at 2100. Here, however, the State did not seek reindictment, and the second jury, as did the first, found the appellant guilty as charged in the indictment.[3]

---

1. "Deadly weapon" means: (a) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (b) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974).

2. Although a knife is not a deadly weapon per se, it can qualify as such through manner of its intended use. *Moreno v. State*, 755 S.W.2d 866, 869 (Tex.Crim.App.1988); *Batro v. State*, 635

S.W.2d 156, 158 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

3. The State contends it was denied an affirmative finding at the first trial because one was mistakenly not requested. At the time, the State's prosecutor argued he was unaware of the ruling in *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985), and believed that the trial judge could make the affirmative finding even without an allegation of a deadly weapon. *Chavez v. State*, 657 S.W.2d 146, 147 (Tex.Crim.App. 1983).

Although the affirmative finding in the judgment has a definite impact on the appellant's eligibility for parole and punishment to be served, we hold the State's request for an affirmative finding does not amount to prosecutorial vindictiveness. *Tenery v. State*, 680 S.W.2d 629, 636–37 (Tex.App.—Corpus Christi 1984, pet. ref'd).

We overrule the appellant's point of error seven.

### 7. Jury misconduct

▋ In point of error eight, the appellant argues the trial court erred in failing to grant his motion for new trial based upon jury misconduct. The appellant complains that the jury, after retiring to deliberate punishment, was informed he had received a 55–year sentence at the first trial.

During the deliberations on sentencing, while the jury panel was sitting in two groups, someone on one panel mentioned that the appellant had received a 55–year sentence in the earlier trial. Upon being informed of the reference to the 55–year sentence, the foreman told the jurors who heard the remark that they had been ordered by the court not to discuss the previous trial or the appellant's sentencing, and that "would be the end of that subject." The issue was not broached again.

At the hearing on the appellant's motion for new trial, Gertrude Canning, a juror, testified that someone had mentioned that the appellant received 55 years at the first trial and that a greater sentence should be given to "send a message to other people in prison that they could not request another trial and get a lesser sentence." Canning also stated, however, that the statement did not influence her decision. Two other jurors and the foreman testified that they also heard the mention of the previous sentence but did not remember any statement about sending a message. Each testified that the knowledge of the previous sentence did not effect their deliberations.

In summary, none of the jurors who testified at the motion for new trial hearing knew if everyone on the panel heard the reference. Three of the jurors disputed whether the "send a message" comment was ever made. All the jurors said the foreman admonished them not to consider or mention anything about the first trial. All of the jurors said the statement did not affect their decision on sentencing.

The Court of Criminal Appeals set out the test for the jury's receipt of evidence not introduced at trial in *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App. 1978). The court stated the two requirements for reversal are (1) that the evidence be detrimental to the accused, and (2) it must be received by the jury. *Id.* It is the character of the evidence, not the probable effect, that determines whether the evidence was detrimental to the appellant. *Rogers v. State*, 551 S.W.2d 369, 370 (Tex. Crim.App.1977). In *Stephenson*, the court noted that a new trial is not required every time something is mentioned among the jurors that is not supported by the evidence. It went on to say that

effective corrective action could remove the taint of such receipt during deliberations, similar to the corrective action of an instruction to disregard evidence improperly heard during trial.

571 S.W.2d at 176. Here, four jurors testified it was said and they each heard it; the four jurors did not know if the others heard it; they all testified the foreman told them not to consider it; and they all said it was not mentioned again and they did not consider it.

We reviewed the juror's testimony. The jurors were initially split between some who wanted probation and others, the majority, who wanted life. Gradually, the jurors came together to an agreement at 60 years, with only one juror dissenting, who was holding out for life. To pacify that juror, they agreed to ask the court about the effect of the parole laws on the sentence. When the trial court told them not to consider parole, the one juror who was holding out agreed to a sentence of 60 years.

We find that the corrective action of the foreman was effective in removing the taint of the information during deliberations. *Stephenson*, 571 S.W.2d at 176.

We overrule the appellant's point of error eight.

### 8. Extraneous act of misconduct

 In point of error nine, the appellant argues the trial court erred in admitting evidence of an extraneous act of misconduct. The evidence complained of consisted of the testimony of Denise Domingue that the appellant got "offensive" and grabbed her when she refused to go riding with him the night Wilber was last seen.

Again, an identical point of error was considered and overruled by the Beaumont Court of Appeals. *Long,* 739 S.W.2d at 105. The Beaumont court stated:

> The court below acted within its discretion in finding the transaction in question relevant to Appellant's state of mind on the evening in question; that is, that his purpose in going to the club was to leave with a woman.... Moreover, the probative value of the evidence is not outweighed by any inflammatory or prejudicial potential.

For the same reasons as stated under points of error one and four, we refuse to relitigate this issue. We overrule the appellant's point of error nine.

### 9. Extraneous offense: Motion for mistrial

 In point of error 10, the appellant argues the trial court erred in overruling his motion for mistrial after testimony showing the commission of an extraneous offense.

Thomas Spivey, an inmate with the Texas Department of Criminal Justice, testified that the appellant participated in a mock trial, where the appellant "confessed" to the killing. After the mock trial, the appellant came to Spivey's cell and admitted he had killed Wilber.

The appellant complains of the following response on direct examination:

> Prosecutor: After he got it out, did he have a change of attitude?
> Spivey: After he got it out, he kind of got—I guess I will never forget the look. He got a glazed look in his eye and a real

strange expression on his face that I've never seen. *And he told me that this wasn't the first one. There had been others.*

The trial court sustained the objection on relevancy, and gave an instruction to disregard, but denied the appellant's motion for mistrial. The appellant contends he was harmed by the inherently prejudicial admission of prior criminal conduct. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex. Crim.App.1972).

 An accused may not be tried for some collateral crime or for being a criminal generally. *Russell v. State,* 598 S.W.2d 238, 250 (Tex.Crim.App.1980). Not every improper response, however, requires reversal. Except in extreme cases, the error is cured if a timely objection to the remark is sustained, and the trial court instructs the jury to disregard. *Stoker v. State,* 788 S.W.2d 1, 13 (Tex.Crim.App.1989); *Thompson v. State,* 612 S.W.2d 925, 928 (Tex. Crim.App.1981).

Although improper, Spivey's response cannot be considered extreme. We find the trial court's instruction to disregard cured any error resulting from the witness' answer.

We overrule the appellant's point of error 10.

### 10. Extraneous offense: Prosecutor's argument

 In point of error 11, the appellant argues he was denied due process by the prosecutor's argument. The appellant contends the prosecutor violated the trial court's earlier instruction to disregard Spivey's statement that there had been "others." The prosecutor argued:

> This man is ready to go off at any time and do this again. These types of crimes, these criminals, *they don't do it once.* This is not just a Saturday night and he went out and decided he was going to rape and kill someone.

The appellant objected that the argument went "beyond the scope of being permissible," but was overruled. The appellant asserts the argument mandates a reversal

because it was extreme, manifestly improper, and injected new and harmful facts into evidence.

Permissible closing arguments come within the following four general areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App.1982); *Gonzales v. State*, 807 S.W.2d 830, 835 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

Here, the argument is best characterized as a plea for law enforcement. It simply asks the jury to find the appellant guilty to prevent any further criminal conduct. The prosecutor's statement "they don't do it once", does not relate to the past, but only to what may probably to happen in the future. We find the appellant's argument is without merit.

We overrule point of error 11.

## 11. Extraneous offense: Instruction to disregard

In point of error 12, the appellant argues he was denied due process by the admission of an extraneous offense, which was not cured by an instruction to disregard. The trial court granted that part of the appellant's motion in limine that asked the State to avoid all references to a pedestrian death involving a motor vehicle the appellant was driving.

On direct examination the appellant stated, "I've done things wrong in my life, but I have never killed a man or a woman." Immediately, on cross-examination, the appellant was questioned as follows:

Prosecutor: Are you telling this jury what you just got through telling us was the truth?

Appellant: Yes, sir, I did.

Prosecutor: The whole truth?

. . . . .

You just got through telling this jury you never killed a man before, had you, or a woman.

Appellant: I've never killed a human being in my life.

Prosecutor: Didn't you kill a man up in Oklahoma one time? You ran him over with a car because he got mad at you because you were trying to run over a snow man?

Appellant: No, sir, I didn't.

Defense: Your Honor, may we approach the bench.

At the bench, the appellant's objection was overruled. At the conclusion of the appellant's testimony and on its own motion, however, the trial court instructed the jury to disregard the Oklahoma incident.

The State argues that the appellant "opened the door" to impeachment about prior killings when he stated he has never killed a human being. *Nelson v. State*, 503 S.W.2d 543, 545 (Tex.Crim.App.1974). In addition, the State argues that any potential error was cured by the later instruction to disregard.

It has long been the law of this State that proof of mere accusations or specific acts of misconduct is inadmissible to affect the credibility of the accused or any other witness. *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Crim.App.1979). This rule, however, assumes that the witness has made no "blanket statement concerning his conduct." *Hoffman v. State*, 514 S.W.2d 248, 254 (Tex.Crim.App.1974). Here, the appellant made a blanket statement about his conduct. The State should be afforded the opportunity to refute the false impression placed before the jury. *See Holden v. State*, 628 S.W.2d 166, 168 (Tex.App.—Houston [14th Dist.] 1982, pet. dism'd).

We overrule the appellant's point of error 12.