Joe Albert ALANIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–01002–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 22, 1994.

Kenneth P. Mingledorff, Houston, for appellant.

John B. Holmes, Jr., Dan McCrory, Larry McDougal, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and ANDELL, JJ.

## OPINION

OLIVER–PARROTT, Justice.

A jury found appellant, Joe Albert Alanis, guilty of murder and assessed punishment at life imprisonment. In his first three points of error, appellant challenges the admission of extraneous offenses. In his fourth point of error, he contends that the trial court erred in denying his request for an accomplice witness instruction in the jury charge. We affirm.

### Summary of the facts

On January 9, 1993, Michael Patrick Riley (complainant) was murdered in a drive-by shooting. According to testimony by appellant's friends, Daryl Garrett (Garrett) and Sean Adams (Adams), Adams was driving appellant and Garrett home when they approached an intersection where the complainant was talking on a pay phone. According to Garrett, appellant and Adams expressed dislike for the complainant and said they "were going to get him." Adams continued driving, however, and dropped off appellant and Garrett at Garrett's house.

Shortly thereafter, appellant asked Garrett to call Lorenzo Rivera (Rivera) because he wanted Rivera to take him somewhere. When Rivera, accompanied by Joe Garcia, arrived at Garrett's house, both appellant and Garrett got into Rivera's car. Rivera noticed that appellant had a gun. While driving in the neighborhood, they noticed that complainant was still on the pay phone

where he was seen earlier that evening. Appellant said he was "going to get him."

Garrett testified that he saw appellant lift a gun, pull back the chamber, and say "watch this; I'm going to pop him in the legs." Appellant then shot the complainant in the legs, back, and chest. Rivera observed these events in his rearview mirror. When he realized what was happening, he sped through the intersection and dropped off appellant and Garrett at Garrett's house.

Appellant left the murder weapon with Garrett, who disassembled it and stored it in a duffel bag. A couple of days after the shooting, appellant asked Adams to retrieve the gun from Garrett and keep it for him. Adams testified that he did not know the gun was used in the murder until he was notified by the police some weeks later. Sometime thereafter, Garrett contacted Adams and told him to dispose of the gun because appellant was in jail. Instead, Adams decided to hide the gun at his workplace. When the police contacted him, Adams testified that he was first too afraid to tell them about the gun, but later that same day turned the gun over to them.

## 1. Extraneous evidence

In his first point of error, appellant argues that the trial court committed reversible error in admitting evidence of an extraneous act in violation of TEX.R.CRIM.EVID. 401 and TEX.R.CRIM.EVID. 404(b). He complains that during the State's direct examination of the arresting officer, F.B.I. Agent William Espino (Espino), the State elicited testimony about appellant's possession of a firearm for the purpose of showing that appellant had a propensity for dangerousness.

Prior to the State's questioning of Espino and outside the presence of the jury, appellant timely objected to the State's introduction of certain testimony by Espino. Specifically, he did not want Espino to testify that (1) he had been on bond for murder in this case; (2) he forfeited bond; (3) a fugitive arrest warrant subsequently issued; and (4) he was found in possession of a firearm upon

---

**1.** The rule's list of "other purposes" is not exclusive. *Rogers,* 853 S.W.2d at 33; *Montgomery,*

his arrest. The trial court permitted Espino to testify about the circumstances surrounding appellant's arrest, including appellant's possession of a firearm, but it did not permit him to testify about the bond forfeiture or to describe the arrest warrant as a fugitive warrant.

### a. Circumstances surrounding the arrest

The trial court has discretion to exclude or admit evidence. *Montgomery v. State,* 810 S.W.2d 372, 379 (Tex.Crim.App.1990). An appellate court should not set aside the trial court's rulings absent a showing in the record that the trial court abused its discretion. *Id.*

■ In general, the State is entitled to show the circumstances surrounding an arrest, *Couret v. State,* 792 S.W.2d 106, 107 (Tex.Crim.App.1990), or what has in the past been characterized as background evidence or res gestae of the arrest. *Rogers v. State,* 853 S.W.2d 29, 33 n. 6 (Tex.Crim.App.1993) (op. on reh'g). However, the propensity rule applies to these "circumstances." *Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim.App. 1991); TEX.R.CRIM.EVID. 404. That is, evidence of a person's character is inadmissible to show action in conformity therewith on a particular occasion. TEX.R.CRIM.EVID. 404(a). Only those purposes other than propensity, such as those listed in rule 404(b),[1] will justify otherwise inadmissible character evidence. *Id.*

■ In light of rules 401 and 404(b), to determine the admissibility of character evidence as a circumstance surrounding the arrest, background evidence must first be relevant. *Rogers,* 853 S.W.2d at 32. Second, it must be admissible as an exception to rule 404(b), either as a listed exception or other permissible purpose. *Id.* at 33. Other than the listed exceptions of rule 404(b), there are two types of background evidence that might be admissible under rule 404(b): (1) evidence of other offenses connected with the primary offense, referred to as "same transaction con-

810 S.W.2d at 388.

textual evidence," and (2) general background evidence, referred to as "background contextual evidence." *Rogers,* 853 S.W.2d at 33 (quoting *Mayes,* 816 S.W.2d at 86–87).

■ Character evidence offered as "same transaction contextual evidence" is admissible as an exception under rule 404(b) where such evidence is necessary to the jury's understanding of the present offense. *Id.* It applies where several crimes are so intermixed or connected that they form an indivisible criminal transaction, and "full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Mayes,* 816 S.W.2d at 86–87 n. 4 (quoting *Nichols v. State,* 97 Tex.Crim. 174, 260 S.W. 1050 (1924)). Same transaction contextual evidence should only be admitted if the facts and circumstances of the offense would make little or no sense without it. *Rogers,* 853 S.W.2d at 33. On the other hand, character evidence offered as background contextual evidence helpful to a jury is not admissible as any exception under rule 404(b). *Mayes,* 816 S.W.2d at 88.

The evidence pertaining to appellant's possession of a firearm constitutes same transaction contextual evidence rather than background contextual evidence, as such evidence is of acts, words, and conduct of appellant at the time of his arrest. *See id.* at 33 (concluding the same for drug possession).

■ Therefore, possession of a firearm is admissible only if necessary to understand the facts and circumstances of the present offense of murder. *Id.* at 33. The State could have described the arrest without mentioning the firearm. Such omission would not have impaired or clouded the jury's understanding of the murder offense, nor would it have caused the evidence regarding the murder to appear incomplete.

No evidence establishes any relationship between the murder weapon and the firearm found in possession of appellant at the time of his arrest. The State specifically offered the extraneous act of possession of a firearm to show appellant's propensity for dangerousness; however, appellant's reputation for peacefulness was not an issue before the trial court. There is no acceptable connection between the present offense and this extraneous act that would make the extraneous act admissible as same transaction contextual evidence.

The trial court erred, and abused its discretion in admitting this evidence.

### b. Harmless error

■ Once error has been found in a criminal case, *Mayes,* 816 S.W.2d at 88, reversal is required unless the appellate court concludes beyond a reasonable doubt that the error did not contribute to the conviction or the punishment assessed. *Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim.App.1989); TEX.R.APP.P. 81(b)(2). In order to reach this determination, the court should: (1) isolate the error and all of its effects; and (2) ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Harris,* 790 S.W.2d at 588. It must do this by examining the entire record in a neutral manner. *Id.* at 586.

■ The reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the juror's decision-making. *Id.* at 587–88. It should ask whether the jurors were able properly to apply the law to the facts in order to reach a verdict. *Id.* If the error was of such magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming the evidence might have been, then the conviction is tainted. *Id.*

■ Although the trial court erred in admitting Espino's testimony of the extraneous act of possession of a firearm, the error was harmless. Prior to the admission of Espino's testimony, Garrett testified that appellant always carried a gun when he was in a car. Appellant made no objection to this testimony. In fact, Garrett, Rivera, and Adams testified about their gun possession as well as appellant's gun possession in general. The eye-witnesses to this murder each identified the murder weapon, which was different from the gun found at appellant's arrest. It

is unlikely that evidence of the latter firearm was of a magnitude that would disrupt the juror's orderly evaluation of the testimony of the eye-witnesses or prejudice their decision-making. Even if this error had not occurred, a rational trier of fact would not have reached a different result. *See id.*

We overrule appellant's first point of error.

## 2. Unanswered improper question

■ In his second point of error, appellant complains that the trial court committed reversible error in overruling appellant's motion for mistrial following an improper question by the State. During its direct examination of Espino, the State posed the following question, which suggested that appellant was under investigation by the F.B.I. for an unnamed extraneous offense: "In August of this year, were you conducting an investigation in which the defendant's name came up?" Appellant timely and specifically objected to the question. The trial court sustained the objection, instructed the jury to disregard it, but denied appellant's request for a mistrial.

■ Merely asking an improper question generally will not constitute reversible error and may be cured or rendered harmless either by a withdrawal of the question or by an instruction to disregard. *Rogers v. State*, 725 S.W.2d 350, 359 (Tex.App.—Houston [1st Dist.] 1987, no pet.). The reviewing court presumes that the jury will obey an instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987). We must put faith in the jury's ability, upon instruction, to recognize the potential for prejudice and then to discount the prejudice in its deliberations. *Id.* An exception to that general rule is where (1) the question is obviously harmful to the defendant, or it appears that the suggestive question is without evidentiary foundation and is clearly calculated to inflame the minds of the jury; and (2) the question is of such character as to suggest the impossibility of withdrawing the impression produced on the juror's minds. *Huffman v. State*, 746 S.W.2d 212, 218 (Tex.Crim.App.1988); *Rogers*, 725 S.W.2d at 359.

Although the State's question was improper because it suggested that appellant was connected in an unnamed extraneous offense, it had some evidentiary foundation in the murder investigation of appellant in the instant case. Because the question is not clearly calculated to elicit testimony about an unnamed extraneous offense, it is not obviously harmful to appellant nor is it of such character that the court's instruction to disregard could not cure it. *See Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App.1985) (finding that instruction cured effects of prosecutor's question about defendant's probation revocation).

We overrule appellant's second point of error.

## 3. Improper response: Instruction to disregard

■ In his third point of error, appellant argues that the trial court committed reversible error in overruling his motion for mistrial following testimony that there was an outstanding arrest warrant against appellant for an extraneous offense. The State asked Espino if he had checked appellant for warrants and if he had found that appellant was a "wanted person." In response, Espino testified that there were two outstanding arrest warrants for appellant—one for murder and one for aggravated assault. Appellant timely and specifically objected to the testimony. The trial court sustained the objection, instructed the jury to disregard it, but denied appellant's request for a mistrial.

■ An accused may not be tried for a collateral crime or for being a criminal generally. *Long v. State*, 820 S.W.2d 888, 894 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Testimony containing reference to an inadmissible extraneous offense is improper and constitutes error, but not every improper response requires reversal. *See id.* Except in extreme cases, an improper response is cured if a timely objection to the remark is sustained and the trial court instructs the jury to disregard. *Id.*

Although improper, Espino's response is not an extreme case. *See Tennard v. State*, 802 S.W.2d 678, 685 (Tex.Crim.App.1990),

*cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991) (finding that prompt instruction cured reference to prior incarceration in penitentiary); *Long,* 820 S.W.2d at 894 (finding reference to another murder not so extreme that instruction could not cure); *Harris,* 790 S.W.2d at 588 (finding instruction cured any error about involvement in extraneous robbery).

In addition, the trial court's instruction to disregard cured any error resulting from Espino's testimony about appellant's outstanding arrest warrant for aggravated assault. *See Gardner,* 730 S.W.2d at 696.

We overrule appellant's third point of error.

## 4. Accomplice witness

 In appellant's fourth point of error, he complains that the trial court committed reversible error in denying appellant's request that the court submit to the jury the factual issue of whether Sean Adams was an accomplice witness whose testimony required corroboration. Appellant argues that the testimony of Daryl Garrett was sufficient to justify submission of the factual issue to the jury.

 An accomplice witness is one who participated with someone else before, during, or after the commission of a crime. *Ashford v. State,* 833 S.W.2d 660, 663 (Tex. App.—Houston [1st Dist.] 1992, no pet.). A person is an accomplice witness if he can be prosecuted for the offense with which the accused is charged. *Id.* A witness is not an accomplice witness just because he knew of the offense and did not disclose it or even concealed it. *Id.* The witness' presence at the scene of the crime does not render that witness an accomplice witness. *Kunkle v. State,* 771 S.W.2d 435, 400 (Tex.Crim.App. 1986), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989). In order to be an accomplice witness, there must be some evidence of an affirmative act on the witness' part to assist in the commission of the offense. *Id.* at 441.

 If it is clear from the evidence that the witness was not an accomplice, the trial court should not give any charge regarding an accomplice, either as an accomplice as a matter of law or as an issue of fact. *Ashford,* 833 S.W.2d at 664. If, however, there is a conflict in the evidence, the court should charge the jury on the question of whether the witness was an accomplice as a matter of fact. *Id.* When the evidence clearly shows a person is an accomplice witness as a matter of law, the court must so charge. *Id.*

The following is testimony from Garret that appellant contends shows Adams is an accomplice witness: on the day of the murder, Adams drove appellant and Garrett around in his father's truck; as they approached an intersection, appellant and Adams saw the complainant and commented that they disliked him and "were going to get him"; Adams dropped off appellant and Garrett at Garrett's house; shortly thereafter appellant asked Rivera for a ride; appellant shot complainant while appellant, Garrett, Rivera, and Garcia were driving in Rivera's car; after the shooting, appellant left his gun with Garrett, who disassembled it and put it in a duffel bag; appellant asked Adams to retrieve the gun from Garrett and told Adams that he would get the gun from him later. Appellant contends that this testimony raises a fact issue as to whether Adams was an accomplice to the complainant's murder.

This testimony does not implicate Adams as an accomplice. There is no evidence that Adams actually participated or in any way assisted in the murder of the complainant. There was no evidence that he was present during the shooting or knew the shooting was planned. He was not indicted for murder, nor any offense arising from the actions that took place the day of the murder.

Appellant cites *Shanks v. State,* 643 S.W.2d 150 (Tex.App.—El Paso 1982), *remanded per curiam,* 710 S.W.2d 585 (Tex. Crim.App.1986), as authority for submitting the issue to the jury when the witness' only involvement is to conceal the murder weapon. The witness in *Shanks* did more than conceal the murder weapon; she disposed of it. *Id.* at 153. Also, she was present during portions of the discussion between her husband and defendant plotting the murder; she ac-

companied her husband and defendant to the location of the murder; she was present during the murder; and she related the story concocted by defendant of an assault by unknown assailants. *Id.* at 152–53. *Shanks* submitted the issue to the jury because there was doubt about her accomplice status. *Id.* at 153.

In this case, Adams' only participation in the murder, if any, was his concealment of the murder weapon. Concealing the murder weapon did not render him an accomplice witness. It is clear from the evidence that Adams was not an accomplice. Thus, the trial court did not err by refusing to include an accomplice witness instruction in the jury charge.

We overrule appellant's fourth and final point of error.

We affirm the trial court's judgment.