**Opinion issued April 18, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-11-00654-CR

————————————

**MICHAEL DESHAWN WINFREY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 09-DCR-052456**

---

## MEMORANDUM OPINION

A jury found Michael Deshawn Winfrey guilty of capital murder. The trial court assessed punishment at life imprisonment without the possibility of parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West 2011). On appeal, Winfrey contends that the trial court erred in failing to instruct the jury on the accomplice

witness rule for two witnesses. We hold that the trial court erred in part, but that this error is harmless in light of the corroborating evidence of other non-accomplice witnesses and the trial record as a whole. We therefore affirm.

## Background

In April 1994, Winfrey, Dalton Boudreaux, Kenneth Mouton, Otterrel Boutte, and Wilton George were cooking out, drinking, and smoking marijuana. Boudreaux drove the group to a nearby convenience store to buy beer. At the store, the men noticed Jeffrey Brown talking on a payphone, and wearing expensive-looking jewelry. Winfrey suggested robbing Brown. The men then went to another store across the street.

As the men came out of the second store, they observed Brown in the parking lot. Winfrey told the others that he was going to rob Brown. George testified that he believed that Winfrey was joking. Boudreaux replied that he did not want any part of it, and he suggested that whoever wanted to leave to avoid being a part of Winfrey's proposed crime should get back in the car. Mouton and George got into the car with Boudreaux. Boutte was using a payphone to call his mother and told the men that he could walk back to the house.

Brown sat in his car in the store parking lot with two of his young children. Winfrey walked up to Brown's car with a revolver and demanded that Brown give him everything. He threatened to shoot Brown's son. Winfrey shot Brown twice

and fled. Bleeding from his wounds, Brown dragged himself into the store. Paramedics treated Brown at the scene, but he later died as a result of his gunshot wounds.

The evidence was conflicting about whether Brown and Winfrey struggled before the shots. The evidence was also conflicting about whether Boudreaux's car was waiting at a stop sign on an adjacent street or was exiting the parking lot at the time of the shots.

George, Boutte, Mouton, Boudreaux, and one of the Brown children testified that, after shooting Brown, Winfrey ran to Boudreaux's car on the street and jumped into the open back window. The other child, however, testified that Winfrey entered through the back door. One child testified that it appeared that the driver of the car was trying to get away from Winfrey by driving off. George testified that Mouton exited the car after the shots, chased Brown, and pulled the necklaces off Brown's neck as Brown dragged himself toward the convenience store. Neither of the children recalled seeing anyone exit the car after the shooting, and Mouton denied doing so. Boudreaux, Mouton, and George testified that they fought with Winfrey after getting back to the house, because they were angry that he had robbed the man. Boutte testified that he had observed the robbery and the shooting from the payphone, but that he did not know what Winfrey was doing until after the shooting.

The men later learned while watching the news that Brown had died. After hearing this, Boudreaux reported his car stolen, and, with Boutte's assistance, he broke the steering column and parked the car several blocks away. None of the men notified the police about the crime.

Fifteen years later, in 2009, Boutte contacted the police to provide information about the 1994 shooting, hoping this would help reduce his pending sentence for drug charges in Louisiana. It did not.

Winfrey did not testify in his own defense, but he had denied all knowledge of the shooting in previous conversations with police. He never indicated that any of the other men were responsible. Each of the two Brown children identified Winfrey in a photo line-up. At trial, the State agreed to accomplice witness instructions for Boudreaux and Mouton. Winfrey requested an accomplice witness instruction as to Boutte and George, as well. The trial court refused the instruction.

## Discussion

### Standard of Review

Winfrey contends that the trial court erred in failing to instruct the jury on the accomplice witness rule as to Boutte and George. We review the decision of the trial court denying a request for accomplice witness instructions for an abuse of discretion. *See Paredes v. State*, 129 S.W.3d 530, 538 (Tex. Crim. App. 2004). A trial court abuses its discretion only if the court's decision is "so clearly wrong as

4

to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Roberts v. State*, 29 S.W.3d 596, 600, (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). A trial court's ruling falls within this zone if the record and the law applicable to the case reasonably support it. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

*Analysis*

A conviction cannot rest on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense. *See* TEX. CODE CRIM. PROC. ANN. art 38.14 (West 2005). Witnesses may be accomplices as a matter of law or as a matter of fact. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law, and the trial court must instruct the jury accordingly. *Id.* If the evidence shows that a witness is not an accomplice, the trial court should not give an accomplice witness instruction. *Id.* at 440. If evidence of the witness's role in the offense is conflicting, then the trial judge should instruct the jury to determine whether a witness is an accomplice. *Id.* at 439–40.

An accomplice is a person who participates in the offense before, during, or after its commission, with the requisite mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). An accomplice must have engaged in an

5

affirmative act that promotes the commission of the offense that the accused committed. *Id.* A witness is not an accomplice simply because he was present at the crime scene and knew about the offense but did not report it. *Smith*, 332 S.W.3d at 439; *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986) (en banc) (holding that a witness was not an accomplice although he was present during the crime, did not abandon the group who committed the crime). Similarly, a witness generally is not an accomplice for concealing an offense, or evidence of an offense, after the offense occurred. *Druery*, 225 S.W.3d at 498; *see e.g.*, *Alanis v. State*, 891 S.W.2d 737, 743 (Tex. App.—Houston [1st Dist.] 1994) (holding that a witness that concealed a murder weapon, without more evidence of involvement in the crime, was not an accomplice witness). However, evidence of flight or guilty conscience, coupled with other corroborating circumstances, may tend to connect an accomplice with the crime. *See Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (en banc). Because neither Boutte nor George was charged with a crime related to the shooting, they were not accomplice witnesses as a matter of law. *See Smith*, 332 S.W.3d at 439. We therefore determine whether Boutte and George were accomplice witnesses as a matter of fact.

The evidence was conflicting regarding Boutte's role as an accomplice. Boutte accompanied the group to the scene, exited the car, and went to a payphone near Brown. He watched the shooting, and later assisted Boudreaux in hiding the

car in which Winfrey and the others had fled. Alone, neither Boutte's presence at the scene nor his attempt to conceal the car Winfrey used to flee would make Boutte an accomplice witness. *See Smith*, 332 S.W.3d at 439; *Druery*, 225 S.W.3d at 498–99. Together, these facts raise an issue about whether Boutte was an accomplice. *See Druery*, 225 S.W.3d at 498. Boutte's concealing the car was an affirmative act to promote the crime and is evidence of Boutte's guilty conscience. *See Hernandez*, 939 S.W.2d at 178. Combined with his presence at the scene, this is evidence from which a reasonable jury could find that Boutte was an accomplice. *See Druery*, 225 S.W.3d at 498. As there was conflicting evidence about whether Boutte was an accomplice, the trial court abused its discretion in not instructing the jury to determine whether Boutte was an accomplice witness. *See Smith*, 332 S.W.3d at 439–40.

The evidence concerning George's role, on the other hand, does not bear out Winfrey's contention that George, too, was an accomplice witness. George was present during the commission of the offense and failed to report the offense. As a passenger in the car, though, there was no evidence that George engaged in any affirmative act to promote the offense—or to conceal the offense, as with Boutte. It is well established that presence at the scene of the offense and knowledge of and failure to report an offense does not give rise to accomplice liability. *See Smith*, 332 S.W.3d at 439. Nor does George's failure to abandon the group after the

offense make him an accomplice. *See Kunkle*, 771 S.W.2d at 439 (holding that witness was not accomplice although he was present during crime, did not abandon group that committed crime, and did not report crime). Thus, the trial court properly concluded that Winfrey was not entitled to an accomplice witness instruction as to George.

### *Harm Analysis*

Because the trial court erred in failing to instruct the jury to find whether Boutte was an accomplice witness, we must determine whether it warrants a new trial. Failure to give an accomplice witness instruction is harmful if the error resulted in "some harm" if, as here, the defendant has preserved error regarding the omitted instruction. *See Herron v. State*, 86 S.W.3d 621, 633 (Tex. Crim. App. 2002) (citing *Almanza v. State*, 686 S.W.2d 157, 157 (Tex. Crim. App. 1984)). Such an error is harmless unless the corroborating evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron*, 86 S.W.3d at 632. In reviewing the strength of the corroborating evidence, we examine its reliability and its tendency to connect the defendant to the crime. Under the "some harm" standard, the reliability inquiry may be satisfied if: (1) the record contains sufficient non-accomplice evidence, and (2) no rational basis exists for disregarding that evidence. *Id.*

The jury heard ample non-accomplice evidence that connected Winfrey to

the murder. Both Brown children identified Winfrey in a photo line-up as the man who shot their father, corroborating Boutte's testimony that Winfrey shot Brown. George corroborated Boutte's accomplice-witness testimony that Winfrey had discussed robbing Brown before Winfrey shot Brown. Nothing in the record suggests that the testimony from the Brown children and George is unreliable, and thus, no rational basis to disregard this evidence exists. *See Herron*, 86 S.W.3d at 632. Accordingly, we conclude that the error was harmless. *See Brooks*, 990 S.W.2d at 287.

## Conclusion

We hold that the trial court properly refused an accomplice-witness instruction for George, but erred in failing to give one for Boutte. We further hold that the error did not cause the rendition of an improper judgment. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).