**Eduardo Cruz ONOFRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00967–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 26, 1992.

Discretionary Review Refused
Nov. 25, 1992.

E.J. Van Buren, Jr., Houston, for appellant.

John B. Holmes, Jr., Scott A. Durfee, Ruben Perez, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of the offense of attempted illegal investment. Thereafter, appellant voluntarily absented himself from the courtroom and the punishment proceedings. The jury assessed his punishment at 45 years confinement and a one million dollar fine. Appellant asserts three points of error. We affirm.

On May 30, 1990, at 1:00 p.m., Officer Joel Castanzda, an undercover police officer with the Harris County Organized Crime Control Narcotics Task Force, met with a confidential informant at a supermarket parking lot. During the meeting, the informant's digital beeper sounded and read out a telephone number, which Castanzda saw to be 484–0581. A Southwestern Bell employee later testified that this was appellant's unlisted telephone number. The informant phoned the number recorded on the pager and arranged a sale of cocaine to appellant. Officer Castanzda checked out five kilograms of cocaine from the task force for use in the investigation, and planned with a police raid team to meet the intending purchaser at the supermarket parking lot and consummate the drug transaction at a nearby restaurant.

At 4:00 p.m., accompanied by the informant, Officer Castanzda met appellant, who was standing beside his car at the supermarket. The informant walked over to appellant's car and viewed the money in the trunk. Officer Castanzda saw only a large bag, but heard appellant tell the informant, "The money is here, I'm ready to deal." Castanzda then motioned to appellant to follow in appellant's car to the restaurant.

At the restaurant parking lot, the informant introduced Castanzda to appellant, who was using an alias. Castanzda then asked appellant if he had the money for the agreed two kilograms of cocaine. Appellant said that he did, and Castanzda said, "Forty-four?," slang for $44,000; appellant replied that was correct. Appellant then gave Castanzda a grocery bag half filled with currency of various denominations. Officer Castanzda repeatedly asked appellant if all the money was there, because it appeared to him that the amount was less than $44,000. Appellant repeatedly assured him it was. Castanzda then told appellant that he was going to call for the

cocaine, and he did call another undercover officer to bring it.

While Castanzda and appellant waited for the cocaine, Castanzda told appellant that if the money was "okay", they could do this two or three times a week. He testified that appellant said that if the cocaine was of a good quality, he would purchase three more kilograms within the hour. When undercover Officer Oliver arrived, Castanzda confirmed that Oliver had the cocaine, and then had appellant follow them to another part of the parking lot. Appellant got inside Officer Oliver's vehicle, where the cocaine was located. Before the exchange of money and cocaine occurred, the raid team arrived and arrested appellant and the two undercover officers.

In his first point of error, appellant asserts that the evidence is insufficient to establish his guilt because there is a fatal variance between the allegations in the indictment and the proof offered at trial. Appellant urges that the alleged "act" that constituted the offense of attempted illegal investment consisted of two actions: (1) negotiation for the purchase of the cocaine; and (2) displaying money for the purchase of cocaine. Appellant contends that there was no proof at trial of his "negotiation" for the purchase of cocaine. The indictment alleged that:

> the Defendant, heretofore on or about May 30, 1990 did then and there unlawfully, intentionally, and knowingly, with the specific intent to commit the offense of illegal investment, do an act, to-wit: *negotiate for the purchase of over four hundred grams of cocaine and display money for said purchase,* which amounted to more than mere preparation that tended to but failed to effect the commission of the offense intended.

(Emphasis added).

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favor-able to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

The relevant statutes provide in pertinent part that:

> (a) A person commits an offense if the person knowingly or intentionally:
>
> (2) finances or invests funds the person knows or believes are intended to further the commission of an offense listed in Subdivision (1).

TEX.HEALTH & SAFETY CODE ANN. § 481.-126(a)(2) (Vernon Pamph.1991).

> (a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

TEX.PENAL CODE ANN. § 15.01(a) (Vernon Supp.1992).

■ To prove the offense of illegal investment in the fact situation presented here, the State would have been required to prove that appellant knowingly or intentionally financed or invested funds he knew or believed were intended to further the commission of the offense of possession of more than 400 grams of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.126(a)(2); *see also Estrada v. State,* 810 S.W.2d 447, 449 (Tex.App.—San Antonio 1991, pet. ref'd). In alleging the inchoate offense, the State described appellant's conduct that it deemed to constitute attempted illegal investment, e.g., that he "negotiate[d] for the purchase of over four hundred grams of cocaine and display[ed] money for said purchase, which amounted to more than mere preparation that tended to but failed to effect the commission of the offense intended." Thus, the State obligated itself to prove the negotiation and the display. *Franklin v. State,* 659 S.W.2d 831, 833 (Tex.Crim.App.1983).

In contending that "negotiation" for the purchase of cocaine was not proved, appellant points out that Officer Castanzda acknowledged on cross-examination that he never spoke to appellant before meeting him in the parking lot; that he did not know who his informant talked to by telephone at appellant's number; that there was no talk, "much less any negotiation," between him and appellant as they went between locations; and that at the restaurant, "it was a matter of just consummating the deal already negotiated at that point." Appellant further points out that the remaining evidence of his negotiation for the purchase of cocaine is circumstantial and insufficient. Specifically, he urges, the initial telephone call between Castanzda's informant and the unidentified person at appellant's phone number does not eliminate the hypothesis that the informant spoke to someone other than appellant on the phone.

▪ Because the term "negotiate" is not defined in the Health and Safety Code, or in the Penal Code, or by caselaw definition, we apply the rules of grammar and common usage to determine its meaning. *See* TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988); *cf. Jordan v. State*, 816 S.W.2d 89, 92 (Tex.Crim.App.1991). "Negotiate" is defined as "to transact business; to bargain with another respecting a purchase and sale; to conduct communications or conferences with a view to reaching a settlement or agreement." BLACK'S LAW DICTIONARY 934, Fifth Ed. (1979). It includes not only "conversation in arranging terms of contract" but also "that which passes between parties or their agents in the course of or incident to the making of a contract." *Id.*

In accordance with the first definition of "negotiation," the evidence amply shows that appellant did "transact business" by participating in the actual sale. Using the second definition, the circumstantial and direct evidence adduced at trial shows that appellant bargained with both the informant and Castanzda for the cocaine. Circumstantially, Officer Castanzda saw appellant's unlisted telephone number on the informant's pager, and a telephone company employee verified that the number was appellant's. After the informant phoned the number shown on the pager to negotiate the drug transaction, appellant came alone to the agreed location with funds and met Officer Castanzda and the informant for the purpose of buying cocaine. In direct evidence, Constanzda testified that he heard appellant tell the informant, "The money is here, I'm ready to deal." Appellant repeatedly reassured Castanzda, as they waited for the cocaine to arrive, that all the money was there. As an added incentive to Castanzda and his group to supply good cocaine, appellant made the late inclusion of a new incentive by stating that he might purchase the remainder of the cocaine in the next hour.

Castanzda's statement on cross-examination, e.g., that he had no "negotiation" with appellant, is not determinative of the meaning of the term "negotiate." Appellant's hypothesis that some other person using appellant's telephone may have negotiated the transaction is repudiated by his direct statements to the informant and Castanzda that *he* was ready to deal and that *he* might buy additional amounts if the first cocaine was of good quality. In light of the entire record, a rational trier of fact could find that there is sufficient evidence that the informant initiated the transaction with appellant or someone else, and that Officer Castanzda followed through and negotiated with appellant for appellant's purchase of the cocaine. Appellant's acts constituted conduct that financed or invested funds appellant knew were intended to further the commission of the sale of cocaine. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *see also Sharp*, 707 S.W.2d at 614. We overrule appellant's first point of error.

In appellant's second point of error, he asserts that the trial court deprived him of due process when it allowed the court's bailiff to testify as a witness for the State.

After the jury found appellant "guilty" at the guilt/innocence phase of trial, and appellant failed to return for the punishment phase of the trial, the State called the clerk of the court and the bailiff as wit-

nesses. The court's clerk testified that her records reflected that after receipt of the verdict, the court instructed appellant that he could leave the courtroom but not the building, and that he was to return at 1:30. She further testified that her records reflected that appellant did not return at 1:30; that it was 3:00 as she testified; and that appellant was not presently in the courtroom. The bailiff then testified that he unsuccessfully searched for appellant on each floor of the building, outside the building, and out on the street.

■ A bailiff may not testify as a witness. *Strickland v. State*, 784 S.W.2d 549, 554 (Tex.App.—Texarkana 1990, pet. ref'd). However, the fact that the bailiff has been called as a witness is not ordinarily grounds for reversal unless harm or prejudice is shown. *Id.* Appellant relies on *Ex parte Halford*, 536 S.W.2d 230 (Tex.Crim. App.1976), which followed *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). In *Gonzales v. Beto*, 405 U.S. 1052, 1054, 92 S.Ct. 1503, 1504, 31 L.Ed.2d 787 (1972), the United States Supreme Court stated:

> *Turner*, of course, did not set down a rigid, *per se* rule automatically requiring the reversal of any conviction whenever any Government witness comes into any contact with the jury. The Court's opinion specifically indicated that association with the jury by a witness whose testimony was "confined to some uncontroverted or merely formal aspect of the case for the prosecution" would hardly present a constitutional problem. [citations omitted] And it indicated that a mere "brief encounter," by chance with the jury would not generally contravene due process principles.

To determine whether appellant's due process rights were violated, this Court is required to assess the bailiff's association with the jury *and* the importance of his testimony. *Long v. State*, 820 S.W.2d 888, 891 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

■ Appellant argued to the trial judge that the bailiff had shepherded the jury to lunch, had been in and out of the jury room, and was on a friendly basis with the jury, such that the extent and intensity of his association with the jury was more than a brief encounter. However, the bailiff's testimony was limited to the uncontroverted fact that he looked for and was unable to locate the absent appellant. Further, the bailiff's testimony was cumulative of the court clerk's unrebutted testimony that appellant was not present in the courtroom—a matter obvious to the jury before the bailiff testified. The jury was not placed in a position of ascribing extra credibility to the bailiff's testimony on a contested issue because of his familiarity and assistance to them. Therefore, we hold that because the bailiff's testimony was confined to an uncontroverted aspect of the prosecution's case, its use did not violate appellant's due process rights. *Id.* Appellant's second point of error is overruled.

In appellant's third point of error, he asserts that the prosecutor's argument was sufficiently prejudicial to require reversal of his conviction.

■ Appellant's attorney urged, and the trial court overruled, an oral motion in limine that the prosecutor not be permitted to argue that appellant was not present during the punishment phase of trial. However, appellant's attorney did not object to the allegedly improper portion of the prosecutor's argument when it was made to the jury. Consequently, he has preserved nothing for review unless, as he contends, error was not waived because the argument was so prejudicial that no instruction could cure the harm. *Briddle v. State*, 742 S.W.2d 379, at 389 (Tex.Cr.App. 1987); *Urbano v. State*, 760 S.W.2d 33, at 37 (Tex.App.–Houston 1988).

During closing argument at the punishment phase of trial, the prosecutor argued:

> Now, by probation, that's totally out of the question. In order to place somebody on probation, you've got to tell them what to do. He's not here. So, how—I'm not even going to go talk about it anymore, for the Judge to set all these terms and conditions of probation.

You've got to talk to the man. He's not here. So, that's out of the question.

Later in argument, the prosecutor stated: But, again, you know, its kind of hard to talk about probation. I mean, the defendant is not here. It's very, very obvious. So, if a defendant is sentenced and he takes his lumps well, that's one kind of message. But the word hits the street that the defendant is not here and he's only sentenced to a minimum number of years, that sends even a stronger message: that it's okay, the cost of doing business; it's all right; don't go back at 1:30, and you get a minimal sentence; that's all right.

Please don't send that kind of message. You have to look at the severity of the crime.

Appellant contends that the prosecutor's argument was an impermissible comment on the defendant's failure to testify. The test to be employed in evaluating such a claim of reversible error is to consider whether the prosecutor's comment was such that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Jones v. State*, 693 S.W.2d 406, at 407 (Tex.Cr.App. 1985); *Bowser v. State*, 816 S.W.2d 518, at 522 (Tex.App.—Corpus Christi 1991). It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim. App.1987) (op. on reh'g), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988).

The prosecutor's argument was a comment on appellant's suitability for probation, not on his failure to testify, and was not manifestly intended to be taken by the jury as a comment on the defendant's failure to testify. *Jones*, 693 S.W.2d at 407. Appellant's attorney had previously argued in closing that the jury should consider granting him probation. The prosecutor's argument was made to emphasize appellant's absence from the courtroom during the punishment phase of his trial. The State presented evidence that the appellant was instructed to return for the punishment phase of the trial; that he was told

not to leave the courthouse; and that the bailiff, after searching the entire building, had not been able to locate him. In light of appellant's counsel's argument requesting probation, the prosecutor's argument was a proper response, concluding with a plea for law enforcement to send a message to persons contemplating flight from the process of law. *Alibar v. State*, 739 S.W.2d 360, at 362 (Tex.Cr.App.1987); *Morris v. State*, 755 S.W.2d 505, at 509 (Tex.App.—Houston 1988). We overrule appellant's third point of error.

The judgment is affirmed.