**Opinion issued August 31, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00334-CR

———————————

**ERIC DONTA RIGGINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 86528-CR**

---

### O P I N I O N

Appellant Eric Donta Riggins was charged by indictment with the first-degree felony offense of illegal barter, expenditure, or investment. *See* TEX. HEALTH & SAFETY CODE § 481.126. A jury found appellant guilty of the lesser-included offense of attempted illegal barter, expenditure, or investment, and the

trial court assessed his punishment at thirty years' confinement. In four issues, appellant contends that: (1) the evidence is legally insufficient to sustain his conviction, (2) he was denied his constitutional right to an impartial judge because the trial court considered inaccurate and extrajudicial information in assessing the sentence, (3) the trial court erred in failing to conduct a hearing on his motion for new trial, and (4) the administrative judge erred in failing to conduct a hearing on his motion to recuse. We affirm.

## Background

In January 2019, the Brazoria County Sheriff's Office (BCSO) Narcotics Unit received information from a confidential informant that an individual named Christopher Berry wanted to buy large quantities of cocaine. BCSO undercover investigators decided to conduct a "reverse buy" operation."[1] The informant called Berry and told him that his "son" would call Berry to set up a meeting. Sergeant Galvan, posing as the informant's son, phoned Berry, who told him, "We're trying to get six of them girls for twenty apiece." Sergeant Galvan testified that Berry wanted to purchase six kilograms of cocaine at $20,000 per kilogram. Berry told Galvan that he would be bringing someone else along who would be supplying most of the funds toward the purchase. The informant set up a meeting with Berry at a Valero gas station on Highway 6 in Manvel, Texas, for January 22, 2019.

---

[1] A "reverse buy," or "reversal," is an operation in which undercover officers pose as drug dealers.

When the investigators arrived at the Valero station, the informant was sitting at a table and speaking with two men, later identified as Berry and appellant. The informant and appellant then approached two undercover officers, Sergeant Galvan and Officer Christopoulos, and the informant introduced Sergeant Galvan as his son. Afterwards, the informant returned to the picnic table where Berry was still sitting. Appellant and Sergeant Galvan got into the officer's undercover vehicle, with Officer Christopoulos seated in the front seat.

During the meeting, appellant talked about how he conducts business with other dealers and wanted to develop a secondary source, stating "I already got my people . . . but I want another line because my line can't keep up with what I got." Appellant told the officers that he did not want his supplier in Mexico to find out that he had a new supplier because they might not supply him anymore. Appellant stated that he dealt with cocaine and that Berry was involved with grass.

Sergeant Galvan testified that appellant told the officers that he wanted to purchase five kilos of cocaine and that he had $100,000 with him to buy it. Appellant stated, "I brought my money out here. . . . He told me they were going for twenty. . . . He told me like he was ready, that's why I brought my bread." Appellant stated multiple times that he had the money with him.

The officers showed a "surprise flash," or sample kilo, to appellant to inspect. After he cut the package open with a knife, appellant told the officers,

3

"That ain't going to fly right there . . . it's recompressed . . . it can't be looking like that." Appellant told the officers he wanted to test it, stating, "Regardless if it cook right, it's about the taste." The officers told appellant they had a ranch where appellant could pick the five kilos he wanted out of the ten or twenty available and cook up the cocaine there or at his place. Appellant told the officers, "Let me see the other ones if you got some more" and "I've got the money right now." Appellant agreed to go to the ranch, telling the officers "I'll follow you then."

At that point, Officer Galvan gave the signal to the surveillance team to perform a bust. Appellant, with Berry in the passenger seat, followed the officers in his vehicle on Highway 6 toward Alvin. A patrol officer then activated his lights and initiated a stop of appellant's vehicle. Officers Galvan and Christopoulos continued driving.

Officer L. Harlan, a narcotics investigator with Brazoria County and the Drug Enforcement Administration, testified that law enforcement recovered $93,035 from appellant's car: $80,000 in a Louis Vuitton backpack and $13,000 was discovered on appellant. A glass beaker was discovered inside the backpack, and officers found a hot plate, digital scale, and a whisk inside appellant's truck. Officer Harlan testified that these are tools used to cook cocaine. The results of a presumptive field test performed following appellant's stop showed cocaine

4

residue on the items. A loaded .45 caliber handgun was discovered in the front driver's side door pocket.

An audio recording of the phone call between the confidential informant and Berry was admitted into evidence at trial. An audio recording of the discussion between appellant and the officers in the undercover vehicle was admitted into evidence as State's Exhibit 4.

After both sides rested, the trial court granted the State's request to include an instruction on the lesser-included offense of attempted barter, expenditure, and investment in the jury charge. The jury found appellant guilty of the lesser-included attempted offense. Following appellant's plea of "true" to an enhancement allegation at the punishment hearing, the trial court sentenced appellant to thirty years' confinement in the Texas Department of Criminal Justice—Institutional Division.

Appellant filed a motion for new trial and a motion to recuse Judge Gilbert. Judge Gilbert declined to recuse himself and referred the case to the presiding judge of the Eleventh Administrative Judicial Region. The referral court issued an order denying appellant's motion to recuse. The trial court subsequently denied appellant's motion for new trial without a hearing. This appeal followed.

**Sufficiency of the Evidence**

In his first issue, appellant contends that the evidence is legally insufficient to support his conviction for attempted illegal investment.

**A.      Standard of Review and Applicable Law**

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In a legal sufficiency review, we consider all the evidence in the light most favorable to the verdict and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

The evidence may be circumstantial or direct, and juries may draw multiple reasonable inferences from the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). A jury may believe or disbelieve some or all of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We presume that the jury resolved any conflicting

inferences in favor of the verdict, and we defer to that determination. *Merritt*, 368 S.W.3d at 525–26.

A person commits the offense of illegal barter, expenditure, or investment if he barters property or finances or invests funds he knows or believes are intended to further the commission of an offense for which the punishment is imprisonment in the Texas Department of Criminal Justice for life. *See* TEX. HEALTH & SAFETY CODE § 481.126(a)(3). Here, the State alleged the funds were "intended to further the commission of the offense of possession of a controlled substance, to wit: cocaine, an offense under Chapter 481 of the Health and Safety Code, punishable by imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life."

A person commits an "attempt" offense if, with the specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. TEX. PENAL CODE § 15.01(a). The defendant need not have accomplished every act short of actual commission to be guilty of an attempted offense. *Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981).

On appeal, appellant disputes both the specific intent to finance or invest in cocaine and an act beyond mere preparation. We address each of these elements in turn.

**B.     Evidence of Intent**

"The element 'with specific intent to commit an offense' has traditionally been interpreted to mean that the actor must have the intent to bring about the desired result." *Nava v. State*, 415 S.W.3d 289, 299 n.22 (Tex. Crim. App. 2013) (quoting *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1982) (op. on reh'g)). Direct evidence of the requisite culpable mental state—the mens rea of the offense—is not required. *Herrera v. State*, 526 S.W.3d 800, 809 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd) (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)). Intent may be inferred from circumstantial evidence. *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Appellant argues that he lacked the necessary intent because he "never came to an agreement to buy cocaine." Specifically, appellant contends that "there must be a verbal commitment to purchase drugs to prove that a buyer has the requisite intent." Appellant points out that he rejected the flash kilo and insisted on testing the cocaine before making a purchase.

In support of his argument, appellant relies on cases discussing the intent necessary for the completed crime; however, the jury convicted appellant of an inchoate, or incomplete crime—*attempted* illegal investment. While "[t]he offense of illegal investment is complete once the parties have raised the money and agreed

8

to commit it to the purchase of a controlled substance," *see Lewis v. State*, No. 05-94-01051-CR, 1996 WL 640590, at *3 (Tex. App.—Dallas Oct. 31, 1996, no pet.) (not designated for publication) (citing *Jordan v. State*, 816 S.W.2d 89, 92 (Tex. 1991)), *attempted* illegal investment occurs once the defendant forms the intent to commit the offense and takes some action beyond mere preparation. *See* TEX. PENAL CODE § 15.01(a). Thus, the agreement to purchase may not necessarily have been reached. *See Olsen v. State*, Nos. 01-88-00212-CR, 01-88-00213-CR, 1988 WL 131826, at *1–3 (Tex. App.—Houston [1st Dist.] Dec. 8, 1988, pet. ref'd) (not designated for publication) (holding that trial court charge properly included lesser-included offense of attempted illegal investment in court's charge where evidence demonstrated that (1) appellant expressed interest in buying a large quantity of marijuana from undercover officer; (2) price was discussed but never firmly decided upon; (3) discussion was had regarding transfer of drugs but substance never actually changed hands; (4) co-defendant handed officer some money, but appellant, who was to supply remainder of money, had not transferred any funds at time of arrest; (5) co-defendant testified that on night of proposed sale, appellant "told him that he [the appellant] did not want to buy the substance because of its poor quality").

This Court also considered a legal sufficiency challenge to a conviction for attempted illegal investment in *Onofre v. State*, 836 S.W.2d 807 (Tex. App.—

9

Houston [1st Dist.] 1992, pet. ref'd). That case concerned a similar sting operation involving an undercover officer and informant. *See id.* at 808. The informant phoned the appellant and arranged a sale of cocaine to him. *Id.* Using cocaine from the task force, the officer and informant met the appellant in a supermarket parking lot. *Id.* When the informant approached the appellant, he saw money in the appellant's trunk. *Id.* The officer overheard the appellant tell the informant, "The money is here, I'm ready to deal." *Id.* Appellant then followed the officer to a restaurant parking lot. *Id.* The officer asked the appellant if he had the money for the agreed-upon amount of cocaine, and the appellant confirmed that he did. *Id.* Appellant confirmed several more times that all the money was in the bag he handed the officer. *Id.* The officer then informed the appellant he would call for the cocaine. *Id.* at 808–09. While they waited, the appellant told the officer that if the cocaine was of an acceptable quality, he would purchase more within the hour. *Id.* at 809. Before the exchange of any drugs for the money, additional officers arrived and arrested the appellant. *Id.*

The appellant challenged the legal sufficiency of the evidence supporting his conviction for attempted illegal investment, contending that there was a fatal variance between the indictment and proof at trial. *Id.* Specifically, the appellant argued that the State failed to prove he "negotiated" for the purchase of cocaine as alleged in the indictment. *Id.* In sustaining the appellant's conviction, we looked to

the definition of "negotiation" and concluded that the appellant (1) transacted business by participating in the actual sale and (2) "bargained with both the informant and [undercover officer] for the cocaine." *Id.* at 810. In particular, the officer saw appellant's telephone number on the informant's pager, appellant came alone to the agreed location with money, and he met with the officer and informant for the purpose of buying cocaine. *Id.* We also pointed to appellant's statements that he was "ready to deal," that he might purchase more cocaine, and his repeated assurances that he had brought all the money necessary to complete the transaction in determining that the evidence was legally sufficient to support the appellant's conviction for attempted illegal investment. *Id.*

Here, appellant contends that *Onofre* is distinguishable because the appellant in that case "had already turned over the full purchase price . . . to the undercover officer, so the transaction was no longer tentative." Appellant notes that no money had been exchanged in his case. However, "[a] person may commit an attempt even if he could have taken further actions without actually committing the intended offense."[2] *Adekeye v. State*, 437 S.W.3d 62, 68–69 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Hackbarth*, 617 S.W.2d at 946). Further, attempt convictions must be considered on a case-by-case basis. *Gibbons v. State*,

---

[2] Further, in *Jordan v. State*, the Court of Criminal Appeals determined that an actual transfer of the controlled substance or money is immaterial to whether the complete crime of illegal investment has been committed. 816 S.W.2d 89, 92 (Tex. Crim. App. 1991).

11

634 S.W.2d 700, 707 (Tex. Crim. App. [Panel Op.] 1982). We look also to circumstantial evidence to determine intent. *Tottenham*, 285 S.W.3d at 28. Here, appellant (1) presented at the prearranged location, (2) told the undercover officer he dealt in cocaine and needed a second source because he could not meet his demand; (3) told the officer he wanted to purchase five kilograms of cocaine for $100,000; (4) had roughly $93,000 in his vehicle in cash; and (5) also had a scale, whisk, and hot plate in his vehicle—items needed to cook the cocaine. All of the foregoing confirms appellant's intent to commit the offense of attempted illegal investment. *See Onofre*, 836 S.W.2d at 810; *Olsen*, 1988 WL 131826, at *3.

## C.    Evidence of an Act Beyond Mere Preparation

Appellant also disputes that he committed an act beyond "mere preparation" as required for an attempt. *See* TEX. PENAL CODE § 15.01(a). He equates his conduct to that of a prospective car burglar, found crouched near a vehicle with his tools nearby. *See Bledsoe v. State*, 578 S.W.2d 123, 124–25 (Tex. Crim. App. [Panel Op.] 1979) (reversing conviction for attempted burglary of vehicle; court held that defendant's conduct amounted only to mere preparation where he was not seen touching vehicle and there were no scratch marks on vehicle indicating attempted entry). But appellant's conduct goes beyond that of the would-be burglar in *Bledsoe*, when compared to the elements necessary to establish the complete crime of illegal investment. Again, neither the money nor drugs need have been

12

exchanged to be guilty of the *completed* crime. *See Jordan*, 816 S.W.2d at 92. And a final agreement as to all the terms of the purchase is not required for an attempt. *See Olsen*, 1988 WL 131826, at *3. Here, appellant and the undercover officer agreed on the price and amount of cocaine and met at the prearranged location. Appellant brought roughly the amount agreed upon and the tools he needed to test the product. Even though appellant was unsatisfied with the flash kilo, he did not back out of the deal but instead demonstrated his continued interest by agreeing to follow officers to another location for further testing, stating: "Let me see the other ones if you've got some more" and "I've got the money right now." When viewed as a whole, we hold that these actions constitute conduct beyond "mere preparation" sufficient to support appellant's conviction for attempted illegal barter, expenditure, or investment. *See* TEX. PENAL CODE § 15.01(a); *Olsen*, 1988 WL 131826, at *3.

We overrule appellant's first issue.

## Motion for New Trial

We next consider appellant's third issue—whether the trial court erred in denying his motion for new trial without a hearing—because it would afford appellant the greatest relief out of his remaining issues. *See* TEX. R. APP. P. 43.3; *Campbell v. State*, 125 S.W.3d, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no

pet.) (stating reviewing court should first address complaints that would afford greatest relief.).

## A.     Standard of Review and Applicable Law

An appellate court reviews the trial court's decision to deny a hearing to a defendant on his motion for new trial for abuse of discretion. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). When an accused presents a motion for new trial raising matters not determinable from the record that could entitle him to relief, the trial court abuses its discretion by failing to hold a hearing. *Id.*; *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000).

To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavit need not establish a prima facie case for a new trial. *Wallace*, 106 S.W.3d at 108. These documents need merely reflect that reasonable grounds exist for holding that a new trial could be granted. *Id.* (citing *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)).

## B.     Technical Requirements for Motion for New Trial

We must first consider whether appellant's motion meets certain technical requirements before we can consider the merits of his motion. The motion must be: (1) timely filed; (2) properly presented; and (3) adequately verified, if the grounds in the motion are based on matters not already in the record. *See* TEX. R. APP. P.

21.4, 21.6; *Green v. State*, 264 S.W.3d 63, 66–67 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

### 1. Timeliness

A motion for new trial must be filed within thirty days of the imposition of the sentence. TEX. R. APP. P. 21.4. Here, the trial court sentenced appellant on April 14, 2022. Appellant filed his motion for new trial on May 16, 2022. Thus, the motion was timely.[3]

### 2. Presentment

In addition to the requirement that the motion be timely filed, a movant must also properly present the motion for new trial to the trial court. *Green*, 264 S.W.3d at 67. The purpose of the presentment requirement is to "put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it." *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998). Merely filing the motion is insufficient to satisfy this requirement. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Actual notice may be demonstrated by the trial judge's signature or other notation on a proposed order, or by a hearing date reflected on the docket. *Carranza*, 960 S.W.2d at 79. Further, the movant must present the motion to the

---

[3] The thirtieth day fell on Saturday, May 14, 2022. Therefore, appellant's motion was due on the following Monday, May 16, 2022. *See* TEX. R. APP. P. 4.1(a).

trial court "within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court." TEX. R. APP. P. 21.6.

The State contends that appellant has failed to demonstrate timely presentment, rejecting appellant's argument that because the trial court entered an order of referral on his recusal motion, and the recusal motion referenced the motion for new trial, the trial court must have had actual notice of the motion for new trial. However, the State's argument ignores the fact that the trial court ultimately ruled on the new trial motion on June 17, 2022, thirty-two days after its filing on May 16, 2022. In *Musgrove v. State*, 960 S.W.2d 74 (Tex. Crim. App. 1998), the Court of Criminal Appeals held that a ruling on a motion for new trial within the 75-day period outlined in Texas Rule of Appellate Procedure 21.6 satisfies the presentment requirement:

> Appellant's motion [for new trial] was not overruled by operation of law. The trial court's ruling by written order denying the motion is evidence that the court was offered the motion and considered its merits. This action is sufficient to show the motion was presented to the trial court. That the motion was ruled on within the 75[-]day period shows it was either presented within ten days of filing or the trial court permitted it to be presented after the ten days but within the 75[-]day period.

*Id.* at 76 (citing *Martinez v. State*, 846 S.W.2d 345, 346 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd)); *see also Green*, 264 S.W.3d at 67 (citing *Musgrove*, 960 S.W.2d at 76 n.2). On this basis, appellant properly presented his

16

motion by way of the trial court's ruling within the 75-day period.[4] *See Musgrove*, 960 S.W.2d at 76; *Green*, 264 S.W.3d at 67.

### 3.    Adequacy of Affidavit

Yet another prerequisite to a hearing on a motion for new trial is that the motion be supported by an affidavit, "either of the defendant or someone else, specifically setting out the factual basis for the claim." *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009); *see also* TEX. R. APP. P. 10.2 (stating that a "motion must be supported by affidavit or other satisfactory evidence" when it depends on certain "types of facts" such as those "not in the record"). The affidavit must demonstrate the truth of the grounds for attack. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21. "The affidavit need not reflect each and every component legally required to establish relief, but rather must merely reflect that reasonable grounds exist for holding that such relief could be granted." *Martinez*, 74 S.W.3d at 21–22. The purpose of the hearing is to develop fully the issues raised in the motion for new trial. *Id.* at 21.

Here, appellant filed a sworn statement and supplemental sworn statement in support of his motion for new trial. Though his motion outlined twenty-five

---

[4]    Because we conclude that appellant satisfied the presentment requirement based on the trial court's order denying the motion for new trial, we need not (and do not) consider appellant's post-submission supplemental clerk's record, or the State's objections to same. Further, appellant's motion to stay the appeal pending supplementation of the record is dismissed as moot.

reasons why appellant should be granted a new trial, only the ineffective assistance arguments present "matters not determinable from the record" that could entitle appellant to a hearing on his motion.[5] *See Wallace*, 106 S.W.3d at 108; *King*, 29 S.W.3d at 569. Presumably, for this reason, appellant addresses only the ineffective assistance grounds on appeal.[6] We therefore focus our review on those five points of error in assessing whether the trial court's failure to conduct a hearing on the new trial motion constituted an abuse of discretion. *See* Tex. R. App. P. 38.1(i). However, we must also consider whether each of these ineffective assistance arguments is properly supported by appellant's sworn statements. *See Smith*, 286 S.W.3d at 339; *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21–22.

## C.    Ineffective Assistance of Counsel at Trial

Ineffective assistance of counsel may be raised in a motion for new trial. *Smith*, 286 S.W.3d at 340. We apply a two-pronged test to ineffective assistance of

---

[5]    The other grounds outlined in the motion were: (1) "the Court made statements during the punishment hearing evincing bias stemming from an extrajudicial source"; (2) "the Court made statements during the guilt/innocence phase of trial evincing bias and calculated to taint the jury by suggesting that Defendant had prior criminal history"; (3) "the Court misdirected the jury as to the law applicable to the case"; (4) the State suppressed the existence of multiple informants; (5) the verdict was contrary to the law and the evidence; (6) "the prosecutor presented false testimony that the kilo presented at trial was the same kilo that had been flashed and never informed the Court or the Jury that the evidence was false"; and (8) the motion for new trial should be granted in the interest of justice.

[6]    Though appellant presented fifteen ineffective assistance grounds in his motion for new trial, he only addresses five of these bases on appeal.

counsel claims. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that his counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. To demonstrate deficient performance, "the appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *see also Smith*, 286 S.W.3d at 340. To show prejudice, the appellant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 694.

Before a defendant is entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, he must allege sufficient facts from which the trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable probability that his trial would have had a different outcome. *Smith*, 286 S.W.3d at 341.

19

### 1.    Conclusory Allegations

Appellant's first three ineffective assistance arguments raised on appeal concern trial counsel's purported failure to object to the following: (1) comments during voir dire as to appellant's punishment even though appellant had elected for the trial court to decide punishment; (2) the prosecutor's insinuation that appellant had prior convictions; and (3) the application paragraph of the "attempt" jury instruction because it did not specify an act constituting an attempt. However, appellant's sworn statements do not address any of these issues. His motion only makes bare assertions that the failure to make these objections "is simply ineffective assistance of counsel," amounts to "deficient performance[,] and defendant was harmed as a result."

Though the motion for new trial and accompanying affidavits need only demonstrate that reasonable grounds exist for holding that a new trial could be granted, appellant has failed to meet this burden. *See Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 22; *see also Buerger v. State*, 60 S.W.3d 358, 363 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding no error in failing to conduct hearing on motion for new trial where affidavit contained conclusory assertions and failed to explain significance of attorney's alleged failures, how actions were deficient, or how they harmed appellant); *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding affidavit, filed in support of ineffective assistance

claims, was conclusory where appellant claimed counsel failed to properly investigate facts and failed to subpoena two named witnesses but failed to explain how counsel's investigation was deficient or what further investigation would have shown); *Watson v. State*, 37 S.W.3d 559, 561 (Tex. App.—Beaumont 2001, no pet.) (determining affidavit was conclusory because it omitted specific details regarding what aspect of agreement appellant failed to understand or what consequence of his plea he failed to appreciate, in spite of having been admonished at length by trial court). We therefore conclude that the trial court did not err in denying the motion for new trial without a hearing with respect to these ineffective assistance grounds.

## 2.    Failure to Advise of Potential Conviction for Attempt

Appellant next contends that he was entitled to a new trial because trial counsel failed to advise him of the risk that he could be convicted of the lesser-included offense of attempted illegal barter, expenditure, or investment. Appellant's sworn statement avers as follows:

> [Counsel] and I never discussed the impact that a lesser included offense jury instruction could have on my ability to win. He never mentioned lesser included offenses. I knew that I had not invested or financed any money towards the purchase of cocaine in my case. That is why I went to trial.
>
> . . .

21

> If [counsel] had told me about the risk of being convicted of attempt, I would have accepted the plea bargain.[7] If the judge would have refused to accept my plea bargain, I would have considered accepting a subsequent offer by the state to avoid the risk that the jury would compromise and find me guilty of an attempt.

As to this issue, appellant's sworn statement goes beyond mere conclusory allegations. Appellant explains how the outcome could have been different if counsel had explained to him the potential for an attempt conviction. However, we must also consider whether appellant's factual allegations of ineffective assistance in this regard demonstrate reasonable grounds to believe that he could prevail under both prongs of the *Strickland* ineffective assistance test. *See Harris v. State*, 475 S.W.3d 395, 404 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Smith*, 286 S.W.3d at 338).

With respect to the second prong of the *Strickland* analysis—whether counsel's allegedly deficient performance prejudiced the defense—the Court of Criminal Appeals has adopted the following test in the context of plea bargains:

> [T]o establish prejudice in a claim of ineffective assistance of counsel in which a defendant is not made aware of a plea-bargain offer, or *rejects a plea-bargain because of bad legal advice*, the applicant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain.

---

7   The record reflects that the State offered six years' confinement, with the sentence suspended to ten years of probation.

*Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013) (emphasis added).

Here, though appellant has demonstrated that he would have accepted the offer if properly counseled, and claims that the State would not have withdrawn it, he cannot demonstrate the third prong of the test, because the trial court explicitly stated during sentencing that it would not have accepted the plea:

> I know there was talk about probation. I don't know anything about this case until you appear before me, whether in trial or plea. And at that time is when the State would offer, if it was a plea, documents, exhibits; and then I would have to read them and I decide ultimately if I would accept or reject the plea. I would have rejected the probation plea in this case.

Because appellant did not demonstrate the requisite prejudice as outlined in *Ex parte Argent*, we must conclude that the trial court's denial of his motion for new trial without a hearing was not erroneous on this basis. *See id.* We turn to appellant's last remaining ineffective assistance argument.

### 3.      Failure to Object to Demonstrative Evidence

Lastly, appellant contends that counsel failed to object to the kilogram of cocaine shown to the jury during trial, because that kilogram was not the same one presented to him during the reverse buy. Appellant argues that this is important because his "defense was that he did not agree to finance or invest in cocaine because he rejected the sample 'flash kilo' based on its appearance and then refused to purchase any cocaine without first testing it." Appellant further alleges that his counsel should have ensured that the jury understood the distinction

23

between demonstrative and substantive evidence. He claims he was prejudiced by counsel's alleged failures because "he was denied admission of the rejected kilo in its actual state and because the State was permitted to place before the jury a kilo that appeared to be better quality."

Regardless of whether appellant believed that the kilo shown at trial was not the same one he saw at the time of the reverse buy, he has never alleged, either in the motion for new trial, or on appeal, that he informed his counsel of this problem. For all counsel knew, they were the same. Even so, "[i]t has long been a principle of an ineffective-assistance-of-counsel analysis that '[a]n isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel.'" *Salinas v. State*, 368 S.W.3d 550, 556 (Tex. App.—Houston [14th Dist.] 2011) (quoting *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)), *aff'd on other grounds*, *Salinas v. Texas*, 570 U.S. 178 (2013).

Further, and importantly, the kilo was only offered at trial for demonstrative purposes. The Court then confirmed the exhibit was "admitted for demonstrative purposes." "[D]emonstrative evidence is admissible if it tends to shed light on the subject at hand." *Onwukwe v. State*, 186 S.W.3d 81, 85 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (internal quotations and alterations omitted). To establish that trial counsel's failure to make an objection rose to the level of ineffective assistance, an appellant must demonstrate that the trial court would have erred in

24

overruling such an objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (per curiam). Here, the exhibit was used to show the jury the amount of cocaine appellant was attempting to purchase. Specifically, it was tendered to the jury so they could "feel the weight of it." Under these facts, we cannot conclude that the trial court would have erred in overruling an objection to the admission of the demonstrative. *See id.*

We overrule appellant's third issue.[8]

## Bias During Sentencing

In his second issue, appellant contends that the trial court showed bias during his sentencing, depriving him of his fundamental due process right to an impartial judge. Specifically, appellant argues that the trial court considered inaccurate and extrajudicial information during sentencing, as evidenced by the following remarks:

> The citizens of Brazoria County are real tired of drug trafficking in our communities. I promise you that. We're tired of them near our homes. We're tired of them near our children and school. You know, this activity took place, this illegal activity, less than a mile away from a school that had thousands of children attending. And that weighs heavily on me.

---

[8] Our analysis of the *Strickland* prongs is restricted to the matter presented in this appeal—whether appellant was entitled to a hearing on his motion for new trial. We express no opinion on the ultimate relief that appellant may seek in a writ of habeas corpus.

**A.     Standard of Review and Applicable Law**

Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). When a claim of judicial bias is raised, we review the entire record to determine whether the judge's bias or prejudice denied the defendant due process. *See Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). Absent a strong showing to the contrary, we presume the trial judge was neutral and impartial. *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Unfavorable rulings alone do not show judicial bias or prejudice; rather, the judicial ruling must "connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Specifically, judicial remarks or rulings may show bias if they reveal "an opinion that derives from an extrajudicial source." *Id.* at 555. A ruling or decision made in reliance on an extrajudicial source is sufficient to show bias or deprivation of due process because it results in "an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Liteky*, 510 U.S. at 554–56; *Kemp v. State*,

846 S.W.2d 289, 305–06 (Tex. Crim. App. 1992). An extrajudicial source is one arising outside the court room or the functioning of the court system. *Roman v. State*, 145 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

## B.     Preservation of Error

The State contends that appellant failed to preserve error as to his claims of judicial bias because he did not raise any objection to the trial court's comments during sentencing. In response, appellant argues that "[a] claim that the trial court was not impartial is fundamental/systemic error that is subject to review even if raised for the first time on appeal." Appellant relies in part on this Court's decision in *Avilez v. State*, 333 S.W.3d 661 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). There, we pointed out that certain legal rights cannot be forfeited and may be raised for the first time on appeal, because they "are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." *Id.* at 671. Though we noted in *Avilez* that a prior decision from our court "reviewed for fundamental error an unpreserved complaint that the trial court was not impartial," *see Jaenicke*, 109 S.W.3d at 796, we assumed without deciding that the appellant's complaints implicated that kind of systemic error that could be addressed in the first instance on appeal. *Avilez*, 333 S.W.3d at 672. We do so again here. We now turn to the merits of appellant's complaints concerning the trial court's conduct during sentencing.

27

## C.  Analysis

Appellant focuses on the trial court's comment about the illegal activity occurring "less than a mile away[9] from a school that had thousands of children attending," claiming this information was gleaned from an extrajudicial source. Appellant is correct that "[n]o evidence of proximity to a school or the number of children in attendance at said school [was] of record in this case." The record does not reveal the source of the judge's information. It is possible the information regarding the school came from the judge's experience in another proceeding, or from the functioning of the court system. *See Roman*, 145 S.W.3d at 321; *see also Liteky*, 510 U.S. at 555 (stating that opinions formed from facts introduced in prior proceedings do not establish bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

However, even assuming the judge learned this information from an extrajudicial source, the mere presence of an extrajudicial source does not necessarily establish bias. *See Liteky*, 510 U.S. at 556. Though the judge stated that the proximity of the illegal activity to children and schools "weigh[ed] heavily on

---

9   Appellant also disputes that the school was "less than a mile away." In his reply to the State's response to his recusal motion, he alleged, for the first time, that the closest school was more than two miles away and attached a map as an exhibit purportedly demonstrating same. Because we determine that any extrajudicial source did not sufficiently form the basis of the trial court's sentence, the truth of this statement is immaterial to our analysis.

[him]," a review of the entire record reflects that he also considered appellant's conduct, both past and present, in assessing punishment:

> [A]ll these fine people that are behind you that came to support you, I wish they were here to hear . . . the recordings that were produced during trial to hear you talk about how you are the big dog and how your supplier in Mexico couldn't keep up and all the terms and conduct and everything that a drug dealer, someone this isn't their first rodeo, been doing this for a long time, I wish they could hear that so they may understand my sentence. They may understand what this is all about.
>
> Your prior conviction serves an important role today. You know, several years ago you were convicted for Aggravated Robbery. . . [w]ith a deadly weapon. And introduced is your pen packet. And here is that mug shot when you went to prison for 15 years. That was a young Mr. Riggins right there. And I want to show you this because you should at this point have said, you know, I'm not going to conduct myself in that manner. I'm not going to break the law. I'm going to go to work and that's what I'm going to do, support a family, enjoy my family. That's what you should have done at this time.
>
> . . .
>
> And in that case you agreed to 15 years['] confinement in the Texas Department of Corrections. And that doesn't seem to be enough. That didn't get your attention at all.
>
> So the range of punishment because of your prior is now a minimum of 5 up to 99 years or life confinement in the Texas Department of Corrections. And again, because of your acts.
>
> . . .
>
> Your illicit and criminal conduct like this cannot be tolerated in this county, and I believe that justice demands and the appropriate sentence in this case is 30 years['] confinement in the Texas Department of Corrections, sir.

29

*Compare Casas v. State*, 524 S.W.3d 921, 924–25 (Tex. App.—Fort Worth 2017, no pet.) (determining trial court's statement during suppression hearing expressing personal knowledge of location where officers typically patrolled for speeders did not demonstrate impermissible bias where trial court also stated that it based ruling on testimony from defense and police officer), *with Carson v. State*, 515 S.W.3d 372, 379 (Tex. App.—Texarkana 2017), *rev'd on other grounds*, 559 S.W.3d 489 (Tex. Crim. App. 2018) (holding that trial court improperly considered numerous unproven extraneous offenses outlined in State's 404(b) notice prior to sentencing; trial court stated on record that these "played a huge role in the sentence [the court] gave"; appellate court held that by its own admission, trial court's sentencing was based on extrajudicial source, in violation of fundamental rights). *See also Goodman v. State*, Nos. 05-20-00172-CR, 05-20-00173-CR, 05-20-00174-CR, 05-20-00175-CR, 05-20-00176-CR, 2021 WL 3042675, at *3 (Tex. App.—Dallas July 19, 2021, no pet.) (mem. op., not designated for publication) (determining trial court's statements indicated sentencing decision was based on defendant's failure to accept responsibility for his crime rather than on unproven factual assertions recited by the court).

Having determined that any extrajudicial source did not sufficiently determine appellant's sentence, given the trial court's stated consideration of appellant's repeated criminal conduct and the evidence adduced at trial, we

overrule appellant's second issue. *See Liteky*, 510 U.S. at 566; *Casas*, 524 S.W.3d at 924–25.

**Motion to Recuse**

In his fourth issue, appellant alleges that the administrative judge erred in failing to conduct a hearing on his motion to recuse. Appellant filed the recusal motion on May 16, 2023. On May 19, 2023, the trial court entered an order declining to recuse himself and referring the case to the presiding judge of the Eleventh Administrative Judicial Region. Thereafter, on May 25, 2022, the presiding judge signed an order denying the recusal motion without a hearing because (1) pursuant to Texas Rule of Civil Procedure 18a(b), the motion was not timely; and (2) the motion was impermissibly based on the trial court's rulings in the case.

**A.    Standard of Review and Applicable Law**

The presiding judge's order denying appellant's motion to recuse relied on two provisions of Texas Rule of Civil Procedure 18a. *See Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (holding rule 18a applicable to criminal cases). First, under rule 18a(a)(3), the motion "must not be based solely on the judge's rulings in the case." TEX. R. CIV. P. 18a(a)(3). Second, rule 18a(b)(1)(A) requires that the motion "must be filed as soon as practicable after the movant knows of the ground stated in the motion." *Id.* at 18(a)(b)(1)(A). In addition, if a

31

recusal motion does not meet the procedural requirements of rule 18a, the motion may be denied without a hearing. *See* TEX. R. CIV. P. 18a(g)(3) (stating that "motion to recuse that does not comply with this rule may be denied without an oral hearing"; "order must state the nature of the noncompliance"); *see also Johnson v. Smith*, 857 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (holding that where motion to recuse was untimely, trial judge was not obligated to forward to another judge for hearing); *Clark v. Smith Cnty. Dist. Att'y's Office*, No. 12-09-00353-CV, 2011 WL 3503138, at *2 (Tex. App.—Tyler Aug. 10, 2011, no pet). (mem. op.) ("Rule 18a's mandate[10] that a hearing be held on a motion to recuse is not triggered unless the recusal motion states valid grounds for disqualification").

We review an order denying a motion to recuse for an abuse of discretion, affirming so long as the ruling on the motion is within the zone of reasonable disagreement. TEX. R. CIV. P. 18(j); *Gaal v. State*, 332 S.W.3d 448, 456 (Tex. Crim. App. 2011). Recusal is appropriate if the movant has provided sufficient facts to establish that a reasonable person with knowledge of the circumstances would harbor doubts as to the impartiality of the trial court, and the bias is of such

---

10    The prior version of Rule 18a(d) stated that upon receipt of the order of referral and the motion to recuse, the presiding judge "shall immediately set a hearing before himself or some other judge designated by him." *See* TEX. R. CIV. P. 18a historical and statutory notes to 2011 amendment. This mandatory language does not appear in the current version of Rule 18a.

a nature and extent as to deny due process of law. *Rosas v. State,* 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Kemp*, 846 S.W.2d at 305). Furthermore, the bias must have come from an extrajudicial source and result in an opinion on the merits of the case other than what the judge learned from participating in the case. *Id.* Therefore, the party challenging a denial of a motion to recuse must show that the trial court's bias arose from an extrajudicial source, not merely from actions during the trial court proceedings, unless those actions demonstrated a high degree of favoritism or antagonism that would render fair judgment impossible. *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Adverse rulings alone are not indicative of the type of deep-seated favoritism that would make fair judgment impossible. *Id.*

**B.    Analysis**

As noted above, the presiding judge first determined that appellant's recusal motion was untimely. Rule 18a(b) requires that a movant file his recusal motion "as soon as practicable after the movant knows of the ground stated in the motion." TEX. R. CIV. P. 18a(b). Appellant's motion to recuse alleges that the trial court showed bias during voir dire (conducted on April 4, 2022) and at sentencing (April 14, 2022). Despite this, appellant did not file his motion to recuse until May 16, 2022. We are unpersuaded by appellant's argument that he did not know of the grounds for recusal until he hired appellate counsel and evaluated the record for a

motion for new trial.[11] The case of *PS Royal Services Group LP v. Fisher*, No. 05-17-01139-CV, 2019 WL 3543575 (Tex. App.—Dallas Aug. 5, 2019, pet. denied) (mem. op.) is illustrative in this context. There, appellants believed the trial court demonstrated bias during trial when he made "improper facial expressions" in front of the jury prior to appellants' counsel's closing argument. *Id.* at \*4. Appellants first raised the issue in a motion for new trial, filed just over a month after the alleged conduct occurred. *Id.* at \*6. Approximately one month after that, appellants presented the issue in a motion to recuse the trial judge from presiding over the hearing on the motion for new trial. *Id.* at \*5. At the hearing on the motion to recuse, the visiting judge inquired as to whether appellants made the trial judge aware of the issue and provided him an opportunity to remedy the situation before filing the motion. *Id.* Counsel responded that he did not personally observe the conduct due to his poor eyesight. *Id.* Ultimately, the visiting judge denied the motion. *Id.*

---

[11] As to the argument that the trial court impermissibly interjected punishment into the voir dire proceedings despite appellant's election that the trial court decide punishment, appellant and his counsel knew of their election at the time the court's comments were made. In fact, appellant points out that his counsel reminded the court of appellant's election during this discussion. Despite this, no one objected to or otherwise complained about the judge's comments at the time they were made.

Regarding the trial court's comments during sentencing about the proximity to a school, the recusal motion does not allege that appellant did not know the true location of the school at the time the comments were made. Regardless, appellant knew at that time that the location of the school was not a fact in evidence.

On appeal, the Dallas Court of Appeals determined that appellants waived any complaints concerning recusal by failing to file their motion within the timeframe required by rule 18a. *Id.* at \*5–6. The court also noted that appellants "did not inform the trial judge of their complaint about his conduct at a time when he had an opportunity to correct any error." *Id.* at \*6 (citing TEX. R. APP. P. 33.1(a)). The court concluded that appellants had adopted a "wait and see" approach before deciding to raise the issue, and "[u]nder [those] circumstances, appellants . . . failed to show that the visiting judge abused its discretion in denying their motion to recuse the trial judge." *Id.*

Here, we similarly conclude that the presiding judge in this case did not abuse its discretion in denying appellant's motion as untimely. *See* TEX. R. CIV. P. 18a(b). Appellant failed to raise his complaints regarding the trial court's conduct during voir dire and sentencing at any time during those proceedings, which would have afforded the trial court an opportunity to address appellant's concerns. He instead waited over a month before complaining of the issues for the first time. Thus, he did not file his motion "as soon as practicable after [he knew] of the grounds stated in the motion." *See id.*; *see also Fisher*, 2019 WL 3543575, at \*6; *K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at \*2 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.) (in divorce case, no abuse of discretion in denying December 2013 motion to recuse based on judge's comments in April

35

2012); *Henry v. Henry*, No. 03-11-00253-CV, 2014 WL 1572478, at *4 (Tex. App.—Austin Apr. 18, 2014, no pet.) (mem. op.) (untimely filing of motion to recuse waived complaint).

Likewise, appellant has failed to demonstrate that the presiding judge abused her discretion in denying the recusal motion because it was based "mainly [on] the trial judge's rulings and actions in the case." *See* TEX. R. CIV. P. 18a(3). Though appellant contends that the judge's comments during sentencing pertaining to the nearby school reflect bias from an "extrajudicial source," we have already determined above that the judge's sentence was not impermissibly based on this information, as he also considered the evidence presented at trial and appellant's prior conviction. Further, appellant's complaints regarding the trial court's comments to the jury as to the range of punishment also focus on the judge's conduct in the case. "Recusal is generally not required purely on the basis of judicial rulings, remarks, or actions, as they would not on their own typically 'evidence the degree of favoritism or antagonism required'; these will usually be grounds for reversal if in error, but not for recusal." *Rhodes v. State*, 357 S.W.3d 796, 800 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (quoting *Liteky*, 510 U.S. at 555).

Because we determine that the presiding judge's denial of appellant's motion to recuse without a hearing was not an abuse of discretion, we overrule appellant's fourth issue.

## Conclusion

Having overruled each of appellant's points of error, we affirm the judgment of the trial court.

Amparo Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Publish. Tex. R. App. P. 47.2(b).