# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00281-CR

**Morgan Rodriguez Navarro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-22-904048, THE HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Navarro challenges his conviction for first-degree felony sexual assault of a child for sexually assaulting his younger sister, June,[1] when she was about sixteen years old and he was twenty-two years old. *See* Tex. Penal Code § 22.011(a)(2), (f) (enhanced to first degree when victim is sister of perpetrator by whole blood, half blood, or adoption). In five issues on appeal, Navarro contends that the alternate jurors had an impermissible influence on the jury by being present in the room during deliberations on guilt-innocence, that his retrial was a violation of the constitutional protection against double jeopardy, and that the trial court abused its discretion when it denied his two motions for mistrial during the retrial, allowed June to testify about extraneous offenses of sexual assault committed by Navarro against her, and allowed his

---

[1] Because the victim in this case was a minor at the time of the offense, we will refer to her with a pseudonym and to her family members by their relationship to her to protect her privacy. *See* Tex. R. App. P. 9.10(a)(3).

motion for new trial to be overruled by operation of law without a hearing. We will affirm the trial court's judgment of conviction.

## PROCEDURAL HISTORY AND BACKGROUND

Navarro's conviction was the result of a retrial, after a mistrial. In the initial trial, the trial court granted a motion in limine that required the State to approach before presenting evidence of Navarro's alleged gang activity in El Salvador. The State explained to the trial court that it wanted to introduce that evidence to explain why June had made a delayed outcry—because she was afraid that he would harm her because of his violent past involving gang activity. During that trial, the State asked witnesses why the family had to move from El Salvador to Texas. While June was testifying, the State let the trial court know that it had forgotten to tell her not to talk about the gang activity and that it needed to do so. The State called Navarro's wife, Regina Linares, who testified that they left El Salvador because there were gang members that wanted to kill Navarro. The State then asked her why the gang members wanted to kill Navarro. Her response was not recorded in the record. However, defense counsel instructed the trial court that she had answered in Spanish that the gangs believed that Navarro had murdered a member of their gang. The State informed the trial court that it needed "to instruct the witness not to talk about certain matters." The trial court determined that one of the jurors spoke Spanish and had heard the witness's testimony about the allegation that Navarro murdered a gang member. The trial court ruled that the testimony was inadmissible and instructed that juror to disregard it. Navarro requested and was granted a mistrial.

2

Navarro filed a motion to dismiss on double jeopardy grounds. The trial court denied that motion. Navarro was retried for the charged offense.

June was eighteen when she testified at the retrial. She testified that about two years prior, Navarro sexually assaulted her at their mother's home where she lived. She explained that he came into the room she was in and pushed her onto the bed. She struggled against him and told him no. He overpowered her and "introduced his penis into [her] vagina." She testified that it was painful. After he was done assaulting her, he threatened that if she told anyone what he had done, he would kill her and make her disappear so that no one would find her. She testified that she believed his threat.

June testified, over objection, that Navarro had previously sexually assaulted her by penetrating her vagina with his penis three or five times when they lived in El Salvador. She could not remember her exact age during the previous assaults but testified that she was six, eight, or ten years old at the time. She testified that he had also threatened to kill and disappear her after each of those other assaults. She testified that she did not tell anyone about the assaults in El Salvador because she did not think her mother (Mother) would believe her. She testified that at the time of trial she was afraid that her mother was going to kick her out of her home because she had outcried against Navarro. She testified that she was in the United States legally.

On cross-examination, June testified that she did not have any injuries from the charged offense. She testified that she knew that people could obtain an immigrant visa to remain in the United States if a person hurts them.

The doctor who performed June's medical exam after her outcry, which was a few months after the charged offense, testified about the exam as an expert in pediatric medicine. The forensic interviewer who interviewed June after her outcry testified that June had told her

about both the charged offense and the extraneous offenses. The State called a licensed psychologist as an expert witness who testified regarding delayed outcries. Detective Darryl Lambert testified about his investigation into the charged offense, including an interview he conducted with Navarro.

Mother testified that she trusted her son, Navarro. She testified that she and her children were seeking political asylum in the United States and that the request was pending as of the time of trial. When asked on cross-examination if June had been an honest or dishonest child, Mother testified that she did not know whether June had been honest with her and could not tell if June tells her the truth.

The defense presented testimony from four witnesses: two of June and Navarro's uncles, Navarro's wife, and Navarro. One of the uncles and Navarro's wife testified that June has a bad reputation in the community regarding truthfulness and honesty but admitted that their information was coming from or based on the opinion of Mother. Navarro denied any wrongdoing.

After hearing all the evidence, the jury found Navarro guilty and assessed punishment at sixty years' imprisonment. *See* Tex. Penal Code §§ 12.32, 22.011(a)(2), (f).

Navarro filed a motion for new trial and requested a hearing. The State responded that the motion had not been properly presented or supported. Navarro filed a response with additional attachments. The State objected to those attachments as an untimely amended motion for new trial. No hearing was held, and Navarro's motion for new trial was overruled by operation of law. Navarro timely appealed his conviction.

**ALTERNATE JUROR**

In his first issue, Navarro complains that the presence of the alternate jurors in the room while the jury deliberated on its guilty verdict was an impermissible outside influence that harmed him. *See* Tex. Code of Crim. Proc. art. 36.22 ("No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."); *Becerra v. State*, 685 S.W.3d 120, 133–34 (Tex. Crim. App. 2024) (*Becerra II*) (holding that presence and participation of alternate juror during deliberations violates Article 36.22).

The State responds that this issue is not preserved. We agree. To preserve a claim for appellate review, there must generally be a timely, specific objection that comports with the complaint on appeal as well as an adverse ruling from the trial court. *See* Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Here, after the guilty verdict, but before the beginning of the punishment phase, defense counsel was told by the trial judge that the alternate jurors had accidentally been in the room during deliberations. Navarro did not object at the time that he was informed that the alternate jurors had been in the room during deliberations. Rather, defense counsel objected to the alternate jurors continuing to act as alternates during the punishment phase. This objection did not preserve error for our review because it did not comport with the issue raised on appeal. *See Clark*, 365 S.W.3d at 339 (explaining that complaint on appeal must comport with objection at trial). He objected for the first time in his motion for new trial. However, "[a] defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial." *Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019). Because Navarro did not timely object to the presence of the alternate jurors during guilt-innocence deliberations, he has not preserved this

5

issue for appellate review. *See* Tex. R. App. P. 33.1; *Becerra v. State*, 620 S.W.3d 745, 747–48 (Tex. Crim. App. 2021) (*Becerra I*) (holding that objection to jury misconduct, including presence of alternate juror during deliberations, "is timely made when the appellant becomes aware of the error"). Because this complaint was not preserved for appellate review, we do not reach the merits of this issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (explaining that if issue has not been preserved for appeal, court of appeals should not address merits of that issue).

In his appellate brief, Navarro states, "To the extent this Court finds this issue was not preserved for appellate review, then trial counsel was ineffective for failing to raise an appropriate challenge." An appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). "This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations." *Muhammed v. State*, 331 S.W.3d 187, 195 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Appellant's brief provides no additional briefing for his alternative ineffective assistance of counsel issue. Thus, we conclude that it is inadequately briefed, and he has waived error. *See id.*

## DOUBLE JEOPARDY

In his second issue on appeal, Navarro contends that his constitutional protection against double jeopardy was violated when the trial court denied his motion to dismiss following the grant of his requested mistrial during his initial trial. Specifically, he alleges that during the initial trial the State intentionally did not inform the witnesses about avoiding the topic of gang activity and asked broad questions to elicit the testimony in violation of the motion in limine. In

support of this contention, he emphasizes the State's comments that it had forgotten to tell June to avoid the topic and that it needed to inform Navarro's wife not to speak on certain topics. Further, he states that this evidence was so prejudicial in this case that the "defense had no choice but to request a mistrial." Thus, he reasons that his retrial was barred by the State's conduct.

"As a general rule, after a jury has been impaneled and sworn, thus placing the defendant in jeopardy, double jeopardy bars a re-trial if the jury is discharged without reaching a verdict." *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002). As applicable here, there is an exception to this rule when the defendant consents to a re-trial. *See id.* Under the consent exception, the Fifth Amendment's protection against double jeopardy bars "retrial after a defendant successfully moved for mistrial *only* when it was shown that the prosecutor engaged in conduct that was 'intended to provoke the defendant into moving for a mistrial.'" *Ex parte Lewis*, 219 S.W.3d 335, 336 (Tex. Crim. App. 2007) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 679, (1982)). This is a "'narrow exception' to the general rule that there is no jeopardy bar to a retrial after a defense-requested mistrial." *Ex parte Masonheimer*, 220 S.W.3d 494, 506 (Tex. Crim. App. 2007). It applies when "the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.'" *Kennedy*, 456 U.S. at 673 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)). However, "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion" is not sufficient to bar retrial unless it was done with the intent to cause the mistrial. *Id.* at 675–76. In its opinion in *Kennedy*, the Supreme Court of the United States determined that the defendant's double jeopardy protections were not violated by a retrial for the charged offense of theft when the defendant had requested the prior mistrial after the

7

prosecutor asked a witness if his reason for not doing business with the defendant is because he was a "crook." 456 U.S. at 669.

"The defendant has the burden of proof on a motion to quash an indictment or complaint." *Wheat v. State*, 537 S.W.2d 20, 21 (Tex. Crim. App. 1976). We "review the facts in the light most favorable to the trial judge's ruling and should uphold it absent an abuse of discretion." *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006) (reviewing denial of double jeopardy claim for abuse of discretion); *see also Williams v. State*, 464 S.W.2d 842, 845 (Tex. Crim. App. 1971) (applying abuse of discretion standard to review of denial of motion to set aside indictment); *Masonheimer*, 220 S.W.3d at 507 (explaining that appellate courts "are required to view the evidence in the light most favorable to the trial court's ruling" on double jeopardy issues). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles,'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)), or unless the trial court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Here, the trial court made findings of fact and conclusions of law regarding its denial of Navarro's motion to dismiss:

2. One week prior to the start of trial, this Court granted part of the defendant's motion in limine which required the State to approach before introducing any evidence of the defendant's possible involvement with a gang while he and the family were still living in El Salvador. The Court stated that it would deal with the issue in real time, during the trial.

3. At trial, the State called the defendant's wife, Regina Linares, to testify. She testified in Spanish and the assistance of a Spanish-to-English translator was used.

4. After she testified that she had met the defendant 9 years earlier in El Salvador but that they had eventually moved to the United States, the prosecutor asked why they had to leave El Salvador.

5. Linares answered that they had to leave because the gangs wanted to kill Defendant.

6. The prosecutor asked her if she knew why and she responded, in Spanish, that Defendant was being threatened by the gangs because they believed he had killed a gang member.

7. Before her answer was translated for the jury, defense counsel asked to approach the bench and the prosecutor informed the court that he needed to instruct Linares not to talk about certain matters. Defense Counsel asserted that the witness had already given objectionable testimony.

8. Although Linares's answer was never translated for the jury, two jurors were Spanish speakers and at least one asserted that they had heard Linares's answer in Spanish.

9. This Court sua sponte instructed the Spanish speakers to completely disregard Linares's answer and any matters that she referenced.

10. The defense then asked for a mistrial which, after consideration during a brief recess, this Court ultimately granted.

11. . . . the defendant filed a motion to dismiss, requesting that the Court find that a second trial of this could violate his right against double jeopardy and enter an order dismissing the pending charge.

12. . . . the State filed a reply to the defendant's motion, arguing that a second prosecution is not double-jeopardy barred.

. . . .

16. The prosecutor's elicitation of the improper testimony in this case was not a reaction to abort a trial that was "going badly for the State." *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006).

17. The prosecutor's question that elicited the response from Linares that led to this mistrial, albeit careless, was not asked with the intent to goad the defendant into moving for a mistrial.

9

18. Because there was no intention by the prosecutor to provoke Defendant to move for a mistrial, the consent exception to the double-jeopardy protections applies and Defendant is not entitled to a dismissal of this pending case.

The trial court explicitly found that the State did not ask the question with the intent to cause a mistrial. The record supports that finding. Specifically, during the initial trial and prior to the grant of Navarro's requested mistrial, the State told the trial court that it had not anticipated that Navarro's wife was going to say that Navarro had killed a gang member. Also, as noted by the trial court, there is no indication in the record that the trial was going badly for the State and that the question was asked in order to avoid an acquittal. *See id.* at 323 (explaining that *Kennedy* standard "require[d] a finding that the prosecutor intended to 'goad the defendant into requesting a mistrial' because the first trial was likely to end in an acquittal").

Viewing the record in the light most favorable to the trial court's ruling, the trial court could have reasonably determined that the State did not intend to provoke Navarro into moving for a mistrial. *See Kennedy*, 456 U.S. at 679 (concluding that because "trial court found" that "conduct culminating in the termination of the first trial in this case was not so intended . . . , that is the end of the matter for purposes of the Double Jeopardy Clause"). We overrule Navarro's second issue.

## MOTIONS FOR MISTRIAL

In his third issue on appeal, Navarro contends that the trial court abused its discretion by denying his two motions for mistrial.

Appellate courts review the trial court's ruling on a motion for mistrial for an abuse of discretion and must uphold the trial court's ruling if it was within the zone of reasonable

disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). In determining whether a trial court abused its discretion by denying a mistrial, appellate courts balances three factors: "(1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of [the conviction or] the punishment assessed absent the misconduct." *Id.* at 75–77.

The first denied motion for mistrial occurred after the State stated during voir dire that Navarro was not probation eligible. After the State concluded its voir dire presentation, the trial court corrected the statement regarding probation eligibility and explained to the venire members that Navarro would be probation eligible if the jury assessed punishment at 10 years imprisonment or less. The trial court instructed the venire members that they would have to be able to follow the law and be able to consider the full punishment range, including community supervision probation. Voir dire continued with the defense's presentation. During a break and outside the presence of the venire panel, Navarro moved for a mistrial based on the incorrect statement regarding probation eligibility. The trial court denied the motion. The trial court explained that it had given a curative instruction, that the error likely hurt the State because it lost the ability to voir dire the panel on the topic of community supervision, and that the defense still had an opportunity to voir dire the panel regarding community supervision. Voir dire then continued, and defense counsel discussed the availability of community supervision in this case and the necessity of the jurors to be able to consider the full range of punishment, including the minimum.

In support of his contention that the trial court abused its discretion, Navarro emphasizes the disparity between the lowest available punishment and his sentence of sixty

11

years' imprisonment. We understand Navarro to be contending that this disparity is evidence of the high severity of the prejudicial effect and the lack of effectiveness of the curative measures. We disagree. First, the misstatement was an isolated incident. *Cf. id.* 85 (describing single instance of misstatement of parole eligibility as "not egregious"). The misstatement of law was corrected in detail by the trial court while there was still an opportunity for Navarro to voir dire on the subject and ensure that the jury had a proper understanding and ability to follow the law regarding how to consider and assess the correct punishment range. Further, the Court's Charge correctly instructed the jury on this issue. *Id.* at 84 (explaining that appellate courts should consider whether charge correctly stated applicable law when determining effectiveness of curative instructions regarding misstatement of law to jury). Regarding the punishment assessed, we are not convinced by Navarro's contention that his sixty-year sentence was caused by the isolated and corrected misstatement of probation eligibility. Navarro does not explain how the corrected misstatement regarding probation eligibility resulted in the jury assessing sixty years versus the minimum sentence of five years imprisonment. There is no indication in the record that the impaneled jurors were confused by this isolated and corrected statement of law much less that their confusion influenced the assessed punishment. Considering the relevant factors, we cannot conclude that the trial court abused its discretion when it denied this motion for mistrial. *Cf. id.* at 85 (concluding that trial court did not abuse its discretion in denying request for mistrial after State's isolated misstatement regarding parole eligibility that was corrected by trial court).

The second denied motion for mistrial occurred during Officer Lambert's testimony. He testified that while interviewing Navarro regarding the allegations underlying the charged offense, Navarro told him that he had been released after an arrest in December 2020.

12

Officer Lambert did not state what offense Navarro had been arrested for. Notably, the State had not asked about the arrest but rather asked if Navarro had mentioned picking up a cooler from his mother's house. The officer answered affirmatively and then added that Navarro had also mentioned the December arrest. Navarro objected to this testimony and moved for a mistrial. The trial court sustained the objection, instructed the jury to disregard the officer's "last remark," and denied the motion for mistrial. On appeal, Navarro contends that the trial court abused its discretion because the testimony was not admissible under Texas Rules of Evidence 401, 402, 403, and 404(b). He also contends that the prejudicial effect was high because of the seriousness of the charged offense. We understand Navarro to be asserting that the first factor weighs in favor of concluding that the trial court abused its discretion because the evidence was not admissible under multiple rules of evidence and the prejudicial effect was high. *See id.* at 77.

However, improper extraneous offense evidence "can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (concluding that "the uninvited and unembellished reference to [defendant's] prior incarceration—although inadmissible—was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard"). An instruction that the jury disregard an objectionable occurrence is generally considered sufficient to cure improprieties that occur during a trial, and appellate courts generally presume that a jury will follow that instruction. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Here, the comment was not responsive to the question asked, was isolated, and did not specify what the arrest was for. The jury was told to disregard the testimony, and it was not referenced or brought up again. Considering the relevant

13

factors and standard of review, we cannot conclude that the trial court abused its discretion when it denied Navarro's motion for mistrial. *See Long v. State*, 820 S.W.2d 888, 894 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd.) (concluding that witness's statement that defendant had committed other murders than charged murder was not so extreme that instruction to disregard could not cure it).

We overrule Navarro's third issue.

## EXTRANEOUS OFFENSE EVIDENCE

In his fourth issue on appeal, Navarro contends that the trial court abused its discretion when it overruled his objection to June's testifying about the extraneous offenses that Navarro allegedly committed against her in El Salvador. He contends that the evidence was not relevant and was thus inadmissible under Texas Rule of Evidence 402, which provides that evidence must be relevant to be admissible. *See* Tex. R. Evid. 402. He also contends that the extraneous offense testimony was inadmissible under Rule 403, which prohibits the admission of relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See id.* R. 403.

We review a trial court's ruling regarding the admission or exclusion of extraneous offense evidence for abuse of discretion. *See Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025). Under that standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be

14

upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Tex. R. Evid. 401. Evidence that makes an elemental fact more or less probable is logically relevant. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The evidence need not prove a fact itself; it is relevant if the evidence "provides a small nudge toward proving or disproving some fact of consequence." *Henley v. State*, 493 S.W.3d 77, 99 (Tex. Crim. App. 2016). At the trial of a defendant accused of sexual assault of a child, evidence that the defendant committed a separate sex offense against a child may be admissible under Article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2. Here, the extraneous offense evidence was relevant to whether Navarro sexually assaulted June in conformity with his character as a sex offender as Article 38.37 explicitly allows. *Id.* We cannot conclude that the trial court abused its discretion in admitting this evidence over Navarro's relevancy objection.

Navarro also contends that the evidence should have been excluded under Rule of Evidence 403. However, Navarro did not make a Rule 403 objection in the trial court. His objection to the relevance of the extraneous offense evidence did not preserve review of his Rule 403 issue. *See Montgomery*, 810 S.W.2d at 388. His Rule 403 issue is not preserved. *See* Tex. R. App. P. 33.1(a). Because this complaint was not preserved for appellate review, we do not

15

reach the merits of this sub-issue. *See Ford*, 305 S.W.3d at 532 (explaining that if issue has not been preserved for appeal, court of appeals should not address merits of that issue).

We overrule Navarro's fourth issue.

## MOTION FOR NEW TRIAL

In his final issue on appeal, Navarro contends that the trial court abused its discretion when it allowed his motion for new trial to be denied by operation of law without holding a hearing.

We review the trial court's denial of a motion for a new trial for an abuse of discretion and will reverse only if the ruling is arbitrary or unsupported by any reasonable view of the evidence. *See Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021). We also review the trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). Thus, we will reverse only when the trial judge's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *See id.* A defendant does not have an absolute right to a hearing on a motion for new trial. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).

Rule of Appellate Procedure 21.6 requires a defendant to timely "present" a motion for new trial to the trial court within ten days of filing it. *See* Tex. R. App. P. 21.6. "The defendant must put the trial judge on actual notice that he desires the judge to take some action, such as making a ruling or holding a hearing, on his motion for new trial." *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). "Presentment" must be apparent from the record. *Id.* "[M]erely filing a motion is insufficient" to satisfy the presentment requirement. *Stokes*

16

*v. State*, 277 S.W.3d 20, 24 (Tex. Crim. App. 2009). Presentment can be demonstrated by a notation on the docket sheet or a signed order by the judge. *Id.*

Here, the record does not demonstrate that Navarro timely "presented" his motion. The trial court imposed Navarro's sentence on February 2, 2024. Appellate counsel filed a timely motion for new trial on March 4, 2024, which included a request for a hearing and an attached proposed order. However, the docket does not contain a notation of when it was presented, the attached proposed order was not signed by the judge, and the judge did not rule on the motion for new trial. *See id.* (explaining that merely filing motion for new trial is insufficient and listing sufficient ways to show presentment).

Navarro contends that he timely presented the motion for new trial. In support he cites to attachments that were first filed in the trial court on March 29, 2024. However, the State objected to those attachments as an untimely amended motion for new trial. Rule of Appellate Procedure 21.4(b) allows a defendant to amend a motion for new trial as long as it is done within thirty days after the date when the trial court imposes the sentence in open court but before the court overrules any preceding motion for new trial. *See* Tex. R. App. P. 21.4(b). The Texas Court of Criminal Appeals has explained that the trial court has discretion to consider late amendments only when the State does not object. *State v. Moore*, 225 S.W.3d 556, 569 (Tex. Crim. App. 2007). Because the additional attachments that Navarro relies on were filed more than thirty days after the trial court imposed the sentence and the State objected to their consideration, we will not consider whether they would satisfy the presentment requirement. *See id.* at 570 (explaining that "Rule 21.4(b) does permit the State to insist within [] seventy-five days [from when sentence was imposed] that the trial court rule only upon the timely motion for new trial as originally filed or timely amended, but not as untimely amended"). Additionally,

17

Navarro's appellate brief includes attached exhibits that are not in the record that he contends prove timely presentment. However, appellate courts may not consider extra-record materials attached to appellate briefs. *See, e.g., Leza v. State*, 351 S.W.3d 344, 363 n.78 (Tex. Crim. App. 2011).

We conclude that Navarro has failed to establish that it is "apparent from the record" that he presented his motion for new trial and request for a hearing to the trial court. *See Gardner*, 306 S.W.3d at 305. Thus, we cannot conclude that the trial court abused its discretion in not conducting a hearing on his motion for new trial and allowing it to be denied by operation of law. *See id.* at 306 (holding trial court did not abuse its discretion when defendant did not present motion for new trial to trial court). We overrule his fifth issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed: April 29, 2026

Do Not Publish

18